**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| **BRIAN WALTON**<br>5047 Small Gains Way<br>Frederick, MD 21703<br>(Frederick County) | Case No. 1:25-cv-01948-BAH |
| **BIANCA JOHNSTON**<br>Big Bear City, CA | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| **DIONYSIOS TSIRKAS**<br>Vallejo, CA | **JURY TRIAL DEMANDED** |
| **JUSTIN CHARRON**<br>Tolland, CT | |
| **LYLE LIBERMAN**<br>Greenwich, CT | |
| **GRAHAM HULSEY**<br>Washington, DC | |
| **IAN SCHAAF**<br>Washington, DC | |
| **JUSTIN COLLINS**<br>Lynn Haven, FL | |
| **JOSEPH CONTOIS**<br>Jacksonville, FL | |
| **ADRIAN WASHINGTON**<br>Des Plaines, IL | |
| **MICHAEL BARNETT**<br>Edwardsville, IL | |
| **SCOTT B. JOHNSON**<br>Minneapolis, MN | |
| **RICHARD LEE**<br>New York, NY | |
| **JONATHAN KELCOURSE**<br>Claryville, NY | |

**VINCENT BOZAAN**
Rockford, WA

**A. MICHAEL KUNDU**
Lake Stevens, WA

**MICAH MASON**
Spokane Valley, WA

**and**

**WESLEY ORNICK**
Morgantown, WV

individually and on behalf of all others
similarly situated,

        Plaintiffs,

    v.

**W.L. GORE & ASSOCIATES**,
The Corporation Trust Incorporated
2405 York Road, Suite 201
Lutherville Timonium, Maryland 21093
(Cecil County)

        Defendant.

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   JURISDICTION AND VENUE ...........................................................................9

III.  THE PARTIES.....................................................................................................17

    A.    Plaintiffs....................................................................................................17

        1.    Maryland Plaintiff.........................................................................17

            a.    Brian Walton......................................................................17

        2.    California Plaintiffs.......................................................................18

            a.    Bianca Johnston ................................................................18

            b.    Dionysios Tsirkas..............................................................19

        3.    Connecticut Plaintiffs....................................................................21

            a.    Justin Charron ...................................................................21

            b.    Lyle Liberman....................................................................22

        4.    District of Columbia Plaintiffs.......................................................23

            a.    Graham Hulsey ..................................................................23

            b.    Ian Schaaf..........................................................................25

        5.    Florida Plaintiffs .........................................................................26

            a.    Justin Collins.....................................................................26

            b.    Joseph Contois ..................................................................27

        6.    Illinois Plaintiffs...........................................................................28

            a.    Adrian Washington ...........................................................28

            b.    Michael Barnett.................................................................30

        7.    Minnesota Plaintiffs ......................................................................31

            a.    Scott B. Johnson................................................................31

8.     New York Plaintiffs ...................................................................32

    a.     Richard Lee ......................................................32

    b.     Jonathan Kelcourse .........................................33

9.     Washington Plaintiffs.................................................................34

    a.     Vincent Bozaan................................................34

    b.     Michael Kundu................................................36

    c.     Micah Mason ...................................................37

10.   West Virginia Plaintiff..............................................................38

    a.     Wesley Ornick .................................................38

B.     Defendant W.L. Gore & Associates .....................................................39

IV.    FACTUAL ALLEGATIONS ....................................................................40

A.     Gore-Tex Fabric is a waterproof, yet breathable, textile commonly used in outdoor clothing and gear............................................................40

B.     Gore-Tex Fabric is manufactured using a "forever chemical" with a toxic legacy. ....................................................................................42

C.     PFAS pose unique and devastating dangers to the environment. .........46

D.     Gore has long been aware of the environmental harm caused by PFAS...................................................................................................49

E.     Gore faces multiple lawsuits related to PFAS exposure and cleanup. ................................................................................................50

F.     In response to significant concerns about environmental and health impacts, Gore promised consumers it was removing PFAS from its products and manufacturing processes. ................................................51

G.     Gore misleads consumers about its use of PFAS in its products and during the manufacturing process for Gore-Tex Fabric by its Common Omissions and Misrepresentations.........................................54

1.     Gore hides its continued use of PFAS to make its Gore-Tex Fabric. .........................................................................55

2.     Gore's manufacturing processes have contaminated areas near its facilities with extremely high levels of PFAS............................56

a.      Maryland has uncovered significant evidence of environmental harm in the areas near Gore manufacturing hubs...........................................56

b.      Gore's own documents corroborate Maryland's findings of elevated PFAS in adjoining areas..............................57

3.      Gore products leach PFAS into the environment via ordinary use.........................................................................60

4.      Gore's "PFC* Free Laminate" label misleads consumers by unilaterally excluding ePTFE and PTFE. ...................................61

5.      Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably. ...........................................................63

H.      Gore knows that its environmental stewardship is material to consumers. ...............................................................66

I.      Gore's promotion of its purported commitment to environmental stewardship in its corporate literature evidences the materiality of the Common Omissions and Misrepresentations.................................68

1.      Gore's "Sustainability Commitment" website promotes environmental stewardship and prominently features "green" images because Gore understood these claims to be material to a reasonable consumer............................................71

2.      Gore keeps a YouTube channel with similar misleading claims about its environmental stewardship because Gore knows this information is material to a reasonable consumer. ...........................................................75

3.      Senior Gore employees consistently reinforce Defendant's message that its commitment to environmental stewardship is synonymous to its commitment to performance because Gore knows this information is material to a reasonable consumer. ...........................................................75

J.      Gore's practices violate the FTC Green Guides and state consumer protection statutes. ...............................................77

K.      Gore has actively concealed the truth about the Common Omissions and Misrepresentations from consumers.............................83

L.      Gore can easily remediate its current practices so they become not misleading to consumers.............................................84

1.    Gore-Tex can be made without any detectable levels of PFAS. ...................................................................................84

2.    There are many ways Gore can change its advertising to avoid misleading consumers. .....................................................86

    a.    Gore can follow expert guidance on how to more accurately label its Gore-Tex products so they are not misleading to consumers. ...........................................86

    b.    Unlike Gore, many other companies clearly explain the use of PFAS in their products. ..................................88

M.    TOLLING OF THE STATUTES OF LIMITATIONS .........................................95

1.    Discovery rule tolling ..................................................95

2.    Fraudulent concealment tolling....................................................96

3.    Estoppel....................................................96

V.    CLASS ACTION ALLEGATIONS ...........................................................96

VI.    CLAIMS FOR RELIEF ...................................................................102

A.    Claim brought on behalf of the Maryland Class..................................................102

COUNT I VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE, COM. LAW § 13-101, *ET SEQ.*)........................................................102

COUNT II FRAUDULENT CONCEALMENT (BASED ON MARYLAND LAW) ........................................................103

B.    Claims brought on behalf of the California Class..................................................105

COUNT III VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) ...............................................105

COUNT IV VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)..................................................107

COUNT V VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *et seq.*)..................................................109

COUNT VI FRAUDULENT CONCEALMENT (BASED ON CALIFORNIA LAW) ........................................................111

C.    Claims brought on behalf of the Connecticut Class.............................................113

COUNT VII VIOLATION OF THE CONNECTICUT UNFAIR  TRADE
PRACTICES ACT (Conn. Gen. Stat. § 42-110A, *et seq.*) ..............................................113

COUNT VIII FRAUDULENT CONCEALMENT (BASED ON CONNECTICUT
LAW) ........................................................................................................................114

    D.      Claims brought on behalf of the District of Columbia ("DC") ............................116

COUNT IX CONSUMER PROTECTION PROCEDURES ACT (CPPA) (D.C.
Code § 28-3901, *et seq.*) ............................................................................................116

COUNT X FRAUDULENT CONCEALMENT (BASED ON DC LAW) ...............................117

    E.      Claims brought on behalf of the Florida Class .....................................................119

COUNT XI VIOLATION OF THE FLORIDA'S UNFAIR &  DECEPTIVE
TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq.*) ............................................119

COUNT XII FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW) ..................122

    F.      Claims brought on behalf of the Illinois Class ......................................................124

COUNT XIII VIOLATION OF THE ILLINOIS CONSUMER FRAUD  AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *et seq.*
AND 720 ILCS 295/1A) ..............................................................................................124

COUNT XIV FRAUD BY CONCEALMENT (BASED ON ILLINOIS LAW) ......................126

    G.      Claims brought on behalf of the Minnesota Class ................................................128

COUNT XV VIOLATIONS OF MINNESOTA DECEPTIVE TRADE
PRACTICES; ENVIRONMENTAL MARKETING CLAIMS (MINN.
STAT. § 325E.41, *et seq.*) ...........................................................................................128

COUNT XVI FRAUDULENT CONCEALMENT (BASED ON MINNESOTA
LAW) ........................................................................................................................131

    H.      Claims brought on behalf of the New York Class .................................................133

COUNT XVII VIOLATION OF THE NEW YORK GENERAL BUSINESS
LAW (N.Y. GEN. BUS. LAW §§ 349-350) ..................................................................133

COUNT XVIII FRAUDULENT CONCEALMENT (BASED ON NEW YORK
LAW) ........................................................................................................................135

    I.      Claims brought on behalf of the Washington Class .............................................137

COUNT XIX VIOLATION OF THE WASHINGTON CONSUMER
PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010, *et seq.*) ....................137

COUNT XX FRAUDULENT CONCEALMENT (BASED ON WASHINGTON LAW) ......................................................................................................139

J.    Claims brought on behalf of the West Virginia Class ........................................141

COUNT XXI VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT (W. VA. CODE § 46A-1-101, *ET SEQ.*) ............................141

COUNT XXII FRAUDULENT CONCEALMENT (BASED ON WEST VIRGINIA LAW)......................................................................................................142

K.    Claims brought on behalf of the Georgia Class ...................................................145

COUNT XXIII VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT (Ga. Code Ann. § 10-1-390, *et seq*.) ...................................145

COUNT XXIV FRAUDULENT CONCEALMENT (BASED ON GEORGIA LAW) .....................................................................................................146

L.    Claims brought on behalf of the Idaho Class ......................................................148

COUNT XXV VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CODE ANN. § 48-601, *ET SEQ.*) ............................................148

COUNT XXVI FRAUDULENT CONCEALMENT (BASED ON IDAHO LAW) .................150

M.    Claims brought on behalf of the Maine Class......................................................152

COUNT XXVII VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT (Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq*.) ....................................................152

COUNT XXVIII FRAUDULENT CONCEALMENT (BASED ON MAINE LAW).......................................................................................................153

N.    Claims brought on behalf of the Massachusetts Class.........................................155

COUNT XXIX VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A) (Mass. Gen. Laws Ch. 93A § 1, *et seq*.)..............................155

COUNT XXX FRAUD BY CONCEALMENT (BASED ON MASSACHUSETTS LAW)...........................................................................156

O.    Claims brought on behalf of the New Hampshire Class......................................158

COUNT XXXI VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT (N.H. Rev. Stat. Ann. § 358-A:1, *et seq*.) ....................................158

COUNT XXXII FRAUDULENT CONCEALMENT (BASED ON NEW HAMPSHIRE LAW)......................................................................................159

P.    Claims on behalf of the New Mexico Class...........................................................161

COUNT XXXIII VIOLATION OF THE NEW MEXICO UNFAIR TRADE
      PRACTICES ACT (N.M. STAT. ANN. § 57-12-1, *ET SEQ.*)........................................161

COUNT XXXIV FRAUDULENT CONCEALMENT (BASED ON NEW
      MEXICO LAW) ...............................................................................................163

Q.    Claims brought on behalf of the Pennsylvania Class...........................................165

COUNT XXXV VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
      PRACTICES  AND CONSUMER PROTECTION LAW (73 PA. CONS.
      STAT. § 201-1, *ET SEQ.*).................................................................................165

COUNT XXXVI FRAUDULENT CONCEALMENT (BASED ON
      PENNSYLVANIA LAW) .................................................................................167

R.    Claims brought on behalf of the Vermont Class..................................................169

COUNT XXXVII VIOLATION OF THE VERMONT CONSUMER FRAUD
      ACT (VT. STAT. ANN. TIT. 9, § 2451, *ET SEQ.*)............................................169

COUNT XXXVIII FRAUDULENT CONCEALMENT (BASED ON
      VERMONT LAW) ...........................................................................................170

PRAYER FOR RELIEF ...............................................................................................172

JURY DEMAND ........................................................................................................172

Plaintiffs allege the following based on personal knowledge and investigation by their counsel as to themselves, and as to all other matters, upon information and belief.

## I.    INTRODUCTION

1.    W.L Gore & Associates ("Gore") manufactures "GORE-TEX," a product familiar to hundreds of thousands of consumers and a household word for many. Gore-Tex Fabric[1] is a waterproof yet breathable material used in outdoor clothing and footwear.

2.    Gore spends considerable marketing resources to represent itself as an exemplary environmental steward while also promising that its products represent a sound choice for the environment. For example, Gore's website and corporate literature inundate consumers with acknowledgments that sustainability is a "top" priority for the company, while also positioning environmental stewardship as one of Gore's founding principles. Gore makes these claims because it knows that protecting the environment matters to consumers. Below is an example of Gore's claims of environmental stewardship:



3.    Gore also invites point-of-sale consumers to scan a QR code, which then directs them to these environmental claims:

---

[1] Gore-Tex Fabric or GORE-TEX means material produced by Gore and consisting of an ePTFE (expanded polytetrafluoroethylene) based Gore-Tex membrane and/or a durable water treatment ("DWR") that contains PFAS (per- and polyfluoroalkyl substances).

- 2 -



4.      As a reflection of Gore's awareness that sustainability is material to consumers, Gore reassures consumers that their Gore-Tex Fabric is a sensible choice for those seeking outdoor adventure, that while making its products, Gore tries to "protect the planet and people," and that Gore-Tex Fabric is "environmentally sound":



- 3 -

RESPONSIBILITY

# OUR PRODUCTS ARE ENVIRONMENTALLY SOUND AND SAFE TO WEAR

For Gore's Fabrics Division, acting responsibly is a natural outgrowth of Gore's culture. We respect the environment and treat our associates and partners fairly.

GORE·TEX

As the GORE-TEX Brand, we take sustainability as seriously as we take performance.



 *"Being fair and responsible to the environment while offering durable products which provide the best in class level of protection lies at the very heart of our culture. This is our founders, Bill and Vieve Gore's, legacy, and we are proud to continue this tradition."*

 ROSS MACLAINE

Gore Fabrics Division Sustainability Leader

- 3 -

5.        Gore also communicates these same messages to consumers at the point-of-sale. Gore does so through its distinctive "Hang Tags." Gore's Hang Tags display the company's logo and are attached to all products made by Gore with Gore-Tex Fabric, as well as products produced by other garment manufacturers that incorporate Gore-Tex Fabric. Anyone who has bought a product with Gore-Tex Fabric is familiar with the Gore-Tex Hang Tag. According to Gore's website, all products that have the Gore-Tex Fabric membrane and/or Gore-Tex DWR with PFAS are sold with a black diamond-shaped "Hang Tag" and a second brown rectangular-shaped "Hang Tag" attached to the product. A few examples of the oversized Hang Tags are shown below:

 



6.        Gore's Hang Tags are designed and produced by Gore in a uniform fashion. Gore then uniformly sends the Hang Tags to the garment manufacturer to affix to the finished product. The Hang Tags are oversized when compared to the size of the finished product and are affixed in a very prominent location (usually in front of the garment and often immediately next to the price

tag). Because of their size and conspicuous location, Gore's Hang Tags must be removed before use. Therefore, all consumers are uniformly exposed to any misrepresentation or material omission included on Gore's Hang Tags.

7.      Gore typically provides product information and care instructions on its Hang Tags, with the expectation that the information on the Hang Tags will be exposed to consumers at point-of-sale. Gore makes environmental claims on its Hang Tags because Gore knows that consumers care about the sustainability of the products they buy and their environmental impact. Gore Hang Tags represent that Gore is "committed to sustainability" and that products made with Gore-Tex Fabric are "environmentally sound." Examples of these statements can be found in the photographs below on the left-hand side. Gore also included a second Hang Tag that promised consumers that Gore-Tex Fabric was "PFC* Free"[2] and that "no PFCs of Environmental Concern" were used "over the lifecycle of the product." Gore represents that it meets this goal via the use of "non-fluorinated materials." These statements can be found on the Hang Tag displayed below on the right-hand side:

---

[2] PFCs means perfluorinated compounds. PFCs are a group of man-made chemicals containing multiple carbon-fluorine bonds. These compounds are known for their ability to repel water, oil, and stains, making them useful in a wide range of products. However, they are also persistent in the environment and can accumulate in living organisms, leading to environmental harm and potential health concerns. In the past, the terms "PFAS" and "PFC" were used interchangeably, but scientists now recommend using the term PFAS over PFC, as the term PFC is an is an "older term" that can be ambiguously defined.







8.    Gore uses ePTFE to make its Gore-Tex Fabric. ePTFE is an extended form of PTFE, or polytetrafluoroethylene, which is a subcategory of PFAS. PFAS, or per- and polyfluoroalkyl substances, refers to a group of thousands of human-made chemicals that have been used since the 1940s. PFAS compounds have very strong carbon-fluorine bonds, or chains. These bonds give PFAS their properties like resistance to heat, chemicals, and degradation. Because of their extreme resistance to degradation in the environment and/or in living organisms, PFAS have been classified as "forever chemicals"—meaning they break down very slowly in nature and are potentially dangerous to human health.

9.      There is a strong scientific consensus, however, that these chemicals[3] are toxic, mobile, and persistent in the environment—and that their use in manufacturing causes extensive and long-lasting environmental contamination.[4] So Gore's statements promising that it is eliminating PFCs both in the product itself, and in Gore's manufacturing process, give consumers the overall impression that Gore is taking serious and measurable steps to reduce the environmental toll resulting from making and selling products with Gore-Tex Fabric.

10.     But this impression is both wrong and false! Gore conceals from consumers the following: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition of

---

[3] *What are PFCs and How Do They Relate to Per- and Polyfluoroalkyl Substances (PFASs)?*, EPA, https://19january2017snapshot.epa.gov/pfas/what-are-pfcs-and-how-do-they-relate-and-polyfluoroalkyl-substances-pfass_.html (last accessed Aug. 8, 2025).

[4] *Per- and Polyfluoroalkyl Substances (PFASs)*, UN Environment Programme, https://www.unep.org/topics/chemicals-and-pollution-action/pollution-and-health/persistent-organic-pollutants-pops/and (last accessed June 16, 2025); Sarah E. Hale, et al., *Persistent, mobile and toxic (PMT) and very persistent and very mobile (vPvM) substances pose an equivalent level of concern to persistent, bioaccumulative and toxic (PBT) and very persistent and very bioaccumulative (vPvB) substances under REACH*, Environmental Sciences Europe 32, 155 (Dec. 10, 2020), https://enveurope.springeropen.com/articles/10.1186/s12302-020-00440-4 (last accessed June 16, 2025); Ian T. Cousins, et al., *The High Persistence of PFAS is Sufficient for their Management as a Chemical Class*, Environ Sci Process Impacts (Jan. 5, 2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC7784706/ (last accessed June 16, 2025).

PFC intentionally excludes ePTFE and materially differs from the standard definition typically used by academics and regulators; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably (These five omissions are referred to as "Common Omissions and Misrepresentations").

11.     Gore's deceptive, misleading, and unfair conduct also violates the federal "Guides for the Use of Environmental Marketing Claims" ("Green Guides").[5] Developed by the Federal Trade Commission ("FTC"), the Green Guides are designed to help marketers avoid making environmental marketing claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45. The Green Guides also play a large role in state consumer protection law. At least twelve states[6] have laws that directly incorporate the standards in the Green Guides as the legal standard for lawfully making certain environmental marketing claims.[7] And twenty-seven states and territories[8] have laws designating the FTC's interpretation in the Green Guides as persuasive authority for courts in assessing deceptive practices.

12.     Plaintiffs bring this case as a class action seeking certification of state law classes, on behalf of themselves and those similarly situated who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024. This lawsuit seeks both injunctive relief under Rule

---

[5] U.S. Code of Federal Regulations, Title 16, Part 260 ("Green Guides").

[6] These states are Alabama, California, Florida, Indiana, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, Pennsylvania, Rhode Island, and Washington.

[7] April 24, 2023 Comments to FTC re Green Guides from the states of California, Connecticut, Delaware, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Wisconsin, available at https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf.

[8] These are Alabama, Alaska, Arizona, Connecticut, District of Columbia, District of Guam, Florida, Idaho, Georgia, Illinois, Maine, Maryland, Massachusetts, Michigan, Montana, New Hampshire, New Mexico, Ohio, South Carolina, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and West Virginia.

23(b)(2), forcing Gore to make accurate corrective disclosures in future product information, and under Rule 23(b)(3) for damages. Plaintiffs assert claims under the consumer protection laws and the common law of the states referenced herein.

## II.    JURISDICTION AND VENUE

13.    This Court has original jurisdiction over all causes of action asserted under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

14.    Maryland is the appropriate venue as Gore is authorized to conduct business in Maryland. Gore's registered agent for service in Maryland is The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093.

15.    This Court has both specific and general jurisdiction over Defendant. As for general jurisdiction, Gore's activities in Maryland have been so continuous and systematic as to render it essentially "at home" in Maryland for over fifty years.

16.    Gore is the owner and operator of 13 industrial properties in or around Elkton, Cecil County, Maryland.[9] Several of these industrial properties manufacture Gore-Tex laminate and are clustered within close groups with specific names. These include:

- The Cherry Hill facility, at 2401 Singerly Road, Elkton, Maryland 21921;

- The Fair Hill facility, at 101 Lewisville Road, Elkton, Maryland 21921;

- The four Appleton facilities, at 100, 201, 301, and 401 Airport Road, Elkton, Maryland 21921;

---

[9] In contrast, Gore lists only two plants in Delaware: Paper Mill West and Paper Mill East.

- The three Elk Mills facilities, at 105, 402, and 501 Vieves Way, Elkton, Maryland 21921; and

- The Lovett facility, at 101 Lovett Drive, Elkton, Maryland.

17. Since Gore first opened its Cherry Hill manufacturing site in 1972, it has developed and produced thousands of products. According to Gore, it is one of its largest and "most vital" of its operational sites because the Cherry Hill facility acts as a "research and development hub" for the company and is "responsible for processing [PTFE] into expanded polytetrafluoroethylene (ePTFE)."[10] The Elk Mills facilities are "responsible for the development, production, testing, and sale of high-performance fabrics laminates."[11] Gore also manufactures the vast majority, if not all, of its Gore-Tex Fabric at its Elkton, Maryland facilities.

18. Associates in Gore's Fabrics Operating Unit, which is responsible for the research, development, and manufacturing of Gore-Tex laminate, also work in Elkton, Maryland. Dr. Hegenbarth, who pioneered the creation of Gore-Tex Fabric, also worked at the Cherry Hill facility when he was employed at Gore.

19. Significant marketing and product development activity also occurs in Elkton, Maryland, as shown by the fact that Mike Adams, a marketing leader for Gore-Tex Fabric, is also headquartered in Elkton. Similarly, Sara Ellis, a Global Product Manager for Gore-Tex Consumer Garments, is also in Elkton.

---

[10] *Cherry Hill*, Gore, https://forward.gore.com/facilities/cherry-hill/ (last accessed June 16, 2025).

[11] *Elk Mills Campus*, Gore, https://forward.gore.com/facilities/elk-mills-campus/ (last accessed June 16, 2025).

- 10 -

- 11 -

20.     Gore also regularly refers to Cecil County, Maryland, as "our community" and features its four main locations in Maryland: Cherry Hill, Fair Hill, Appleton, and Elk Mills.[12] Gore also states on this webpage that it has been operating in Cecil County, Maryland, for more than 50 years and is the county's largest private sector employer, with more than 3,000 Gore employees based in the county:



## About the Facilities

W. L. Gore & Associates has been operating in Cecil County, Maryland, for more than 50 years and is the largest private sector employer, with more than 3,000 Associates based in the county. Since Gore purchased the Cherry Hill facility as our first manufacturing site in the county, we have greatly expanded our local presence with each facility offering distinct manufacturing processes. We are proud to locally manufacture a wide range of highly technical products ⬈ that make a meaningful difference in our community and around the world. Learn more here ⬈.

---

[12] In contrast, Gore lists no facility locations in Delaware.

- 11 -

21.	Gore's own documents also show that Maryland has served as the manufacturing headquarters for Gore-Tex Fabric for the past 45 years. Gore's history in Maryland has been directly tied to: (1) its production (and related pollution) of PFAS; (2) manufacturing of Gore-Tex; and (3) consent to Maryland's laws and supervision by Maryland regulatory authorities.

22.	Gore built its plant in Elkton, Maryland, in 1973. This plant is still a central part of Gore's manufacturing presence in Maryland, and it has consistently required approved permitting

and pollution monitoring by Maryland state agencies. Below are only a few examples, spanning from 1978 and 1999, where Gore conferred with Maryland regulatory authorities regarding the use, emissions, and disposal of PTFE in Maryland. The permits and reporting often related to manufacturing of both PTFEs and Gore-Tex and the related environmental impact. And throughout the period, Gore has agreed to follow Maryland rules and regulations as to permitting and reporting requirements for its operations involving these pollutants.[13]



---

[13] Letter from Harvey Short, Maintenance Supervisor, W.L. Gore & Associates, Inc., Elkton, Maryland, to Mr. William Sumner, Director, Environmental Health Service, Health Department, Cecil County, Maryland (Jan. 11, 1978) (on file with the Maryland Department of Environment, requested through Public Information Act Request No. 2025-00432, Maryland Department of Environment, Feb. 13, 2025); Maryland Department of the Environment, Criteria Pollutants Emission Certification Report, Report for Calendar Year 1999, from W.L. Gore & Associates, Inc. Chery Hill, Maryland (on file with the Maryland Department of Environment, requested through Public Information Act Request No. 2025-00432, Maryland Department of Environment, Feb. 13, 2025)); Letter from David Painter, Associate, W.L. Gore & Associates, Inc., Elkton, Maryland, to Mr. Jason A. Kerpelman, Public Health Engineer, Air Management Administration, Baltimore, Maryland (Aug. 21, 1991) (on file with the Maryland Department of Environment, requested through Public Information Act Request No. 2025-00432, Maryland Department of Environment, Feb. 13, 2025).



# W. L. GORE & ASSOCIATES, INC.

2401 SINGERLY ROAD • P.O. BOX 1220 • ELKTON, MARYLAND 21922-1220
PHONE: 301/398-6400 • TWX: 710/236-1664 • FAX: 301/398-5752

CHERRY HILL DIVISION

GORE
Creative Technologies
Worldwide

August 21, 1991

RECEIVED
AUG 2 3 1991
AIR MANAGEMENT ADMINISTRATION

Air Management Administration
2500 Broening Highway
Baltimore, MD   21224

Attn:  Jason A. Kerpelman, Public Health Engineer
Ref:   W.L. Gore & Associates, Inc., Cherry Hill Site
       Premise #07-0079

Dear Mr. Kerpelman:

The following breakdown of emissions is based on our 1990
material balance:

1.  GORE-TEX® production from PTFE pellets. *films and shapes = 231 lb/day*

    Emitted mineral spirits   approximately 57,640 lbs. *× 1/250 days*

2.  Mixing Room for Elk Creek I coating tank solutions. *50 days/yr*

    Emitted Xylene        approximately    100 lbs.
    Emitted Isocyanate    approximately     .3 lbs.   ↓

3.  Clean Room Garment manufacture.    *2 lb/day*

    No emissions other than water vapor

4.  Speciality GORE-TEX® products for wire manufacturing. *filled prods*

    Emitted mineral spirits   approximately 1,160 lbs.
    Emitted propylene glycol  approximately   400 lbs.
                                             *1560  lb × 1/250 days = 6 lb/day*

Fuel oil used for heating of plant:

    #2 fuel oil                  17,473 gallons
    Recovered mineral spirits    14,277 gallons

We consider the enclosed information to be **confidential** and
proprietary.

Should you have any questions or comments, please do not
hesitate to call me at (301) 996-2109.

Yours truly,    *see next sheet*

David Painter
Associate

*?? These are emissions, cannot be conf -*

DP/tls:dp282

cc:  Mary Leonard

GORE-TEX is a trademark of W.L. Gore & Associates, Inc.
UNITED STATES • GERMANY • FRANCE • UNITED KINGDOM • JAPAN

---

| CRITERIA POLLUTANTS EMISSION CERTIFICATION REPORT | Report for Calendar Year | 1999 |
|---|---|---|
| **A. PREMISE INDENTIFICATION** Company Name   W. L. Gore & Associates, Inc.   Cherry Hill | Do Not Write in This Space | |
| | Date Received Local | |
| Address    2401 Singerly Road | Date Received State 2/28/2000 | |
| City:  Elkton       County:  Cecil    Zip Code:    21921 | AIRS Code | |
| B. Briefly Describe the Major Function of the Premises | FINDS Code | |
| PTFE Stretching and Forming | SIC Code | |
| Specialty products of PTFE / Fillers | Premise Number  07-0079 | |
| | Source Latitude and Longitude | |

- 14 -

23.   By 2015, Gore had expanded to 11 plants operating in Elkton, Maryland, with all using fluoropolymer material, which is transformed into Gore-Tex.[14]

**Air Toxics Compliance for (1) heated drum-based dryer-expander sinter machine (DSL2)**
**W. L. Gore & Associates, Inc – Cherry Hill**
Permittee Name

W. L. Gore & Associates, Inc. is a worldwide manufacturing corporation with headquarters in Newark, Delaware. Eleven (11) facilities, located in the Elkton, Maryland area, all use Fluoropolymer material (FPM) as their primary raw material.

FPM is processed with chemicals to produce products such as Gore-Tex (patented, trademark name), which is a strong porous film material. Gore-Tex fibers are chemically inert, resist deterioration due to age, are weather durable and can be used over a wide range of temperatures. This versatile FPM has been developed for use in hundreds of products, which include wire insulation, surgical patches, and arteries, packing fibers, gaskets tape, filter products and garment laminates.

24.   In 2023, Gore acknowledged to Maryland state officials in its tri-annual compliance report that most of its corporate "product-development work," which includes fluoropolymer processing, occurs at the Cherry Hill plant in Maryland.[15]

Most of the corporate product-development work is carried out at the Cherry Hill plant. At this facility, FPM is mixed with other chemicals and compounds to produce raw materials for the other W.L. Gore facilities in the area. Complete processes with accompanying equipment are frequently moved from the Cherry Hill location to other locations in order to satisfy demand for newly developed products.

25.   Other PTFE operations by Gore in Maryland include stretching and forming PTFE, outputting specialty products of PTFE with fillers, transforming PFFE from powdered form into sheets of plastics, and mixing PTFE with other compounds and chemicals to produce raw materials

---

[14] Permit to Construct for the installation of the heated drum-based dryer-expander sinter machine to be located at W.L. Gore & Associates, Inc-Cherry Hill, Elkton, Maryland, from Maryland Department of the Environment, Air & Radiation Administration, Air Quality Permits Program to W.L. Gore & Associates, Elkton, Maryland (dated Dec. 7, 2022) (on file with the Maryland Department of Environment, requested through Public Information Act Request No. 2025-00432, Maryland Department of Environment, Feb. 13, 2025).

[15] State of Maryland Department of the Environment Air and Radiation Administration Inspection and Observation/AFS Point Action, Gore, W.L. – Cherry Hill Plant (date of inspection April 19, 2023) (on file with the Maryland Department of Environment, requested through Public Information Act Request No. 2025-00432, Maryland Department of Environment, Feb. 13, 2025).

- 15 -

to share within its facilities. Gore also receives PTFE from external suppliers and processes it into PTFE tapes and membranes. This manufacturing causes both air and ground pollution.

26.     Gore has also submitted to active litigation as a defendant in multiple lawsuits filed in the United States District Court for the District of Maryland. These cases primarily involve allegations related to environmental contamination at the company's facilities in Cecil County, Maryland. Judge Richard D. Bennett of the United States District Court of Maryland is overseeing each of these lawsuits. *See* section IV.E, *supra*.

27.     Defendant purposefully directed conduct toward Maryland consumers by marketing, advertising, and promoting Gore-Tex Fabric as environmentally sustainable. Defendant made these statements knowing that it does not adhere to environmentally sustainable practices. Instead, these statements were designed to conceal and mislead consumers, including Maryland consumers, about the serious consequences Gore's manufacturing practices have on the environment. These deceptions have caused economic harm to residents and consumers, including Maryland residents and consumers, while increasing profits and sales to Defendant. Defendant also worked to actively conceal and misrepresent the known environmental harm of Gore-Tex Fabric and knowingly withhold material information regarding the consequences of buying and using Gore-Tex Fabric. Gore also understood that harmful impacts would result by withholding this knowledge from the public and consumers who purchase Gore's products.

28.     A substantial effect of Defendant's actions has and continues to occur in Maryland, as residents there have suffered and continue to suffer injuries from Gore's wrongful conduct. The harmful effects described herein are the direct and foreseeable results of Defendant's conduct. As such, Defendant has manifestly availed itself of the privilege of doing business in Maryland.

29.      Venue is proper in this Court under 28 U.S.C. § 1367 and 28 U.S.C. § 1391 because a substantial part of the events or omissions and misrepresentations giving rise to Plaintiffs' claims occurred in this District. Moreover, Plaintiff Walton bought his Gore-Tex Fabric products in this District and Defendant has marketed, advertised, and provided for sale the Gore-Tex Fabric Products within this District.

### III.    THE PARTIES

**A.    Plaintiffs**

**1.    Maryland Plaintiff**

**a.    Brian Walton**

30.      Plaintiff Brian Walton, at all relevant times, was a citizen of the State of Maryland and a resident of Frederick, Maryland. He bought two Mountain Hardware Rain jackets and one Mountain Hardware jacket with Gore-Tex Fabric online from Mountain Hardware in about 2018. Plaintiff Walton also bought a Timberland Rain jacket with Gore-Tex Fabric from Marshall's in Rockville, Maryland, in about 2020. These purchases are the "Products" for the purposes of this section.

31.      The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

32.      Plaintiff Walton believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Products' packaging was he told that the Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

33.     Before buying the Products, Plaintiff Walton saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

34.     Plaintiff Walton also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 2.     California Plaintiffs

#### a.     Bianca Johnston

35.     Plaintiff Bianca Johnston, at all relevant times, was a citizen of the State of California and a resident of Big Bear City, California. She bought Sequoia Mittens with Gore-Tex Fabric from Backcountry.com in California on September 14, 2022. Plaintiff also bought 686 Gloves with Gore-Tex Fabric from Snow Summit Sports Store in California in about 2021 and Burton Snow Pants from Blauer Ski & Board Shop in California in late-2019. These purchases are the "Products" for the proposes of this section.

36.     The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

37.    Plaintiff Johnston believed she was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was she told that the Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was she told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

38.    Before buying the Products, Plaintiff Johnston saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

39.    Plaintiff Johnston also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### b.    Dionysios Tsirkas

40.    Plaintiff Dionysios Tsirkas, at all relevant times, was a citizen of the State of California and a resident of Vallejo, California. He bought a Dainese Dolomiti jacket with Gore-Tex fabric at a Dainese store in San Francisco on December 22, 2022. This purchase is the "Product" for the purpose of this section.

41. The Gore-Tex Fabric in the Product was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

42. Plaintiff Tsirkas believed he was buying a high-quality Product made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

43. Before buying the Product, Plaintiff Tsirkas saw and was exposed to the Product labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Product or would have paid less for it. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

44. Plaintiff Tsirkas also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 3.  Connecticut Plaintiffs

#### a.  Justin Charron

45.     Plaintiff Justin Charron, at all times relevant hereto, was a citizen of the State of Connecticut and resided in Tolland, Connecticut when he made his Gore-Tex Fabric purchases. Currently, he is a resident of Gardiner, Maine. He purchased a hard shell jacket with Gore-Tex Fabric from REI in West Hartfield, Connecticut in approximately 2018. Plaintiff also purchased shoes with Gore-Tex Fabric from Merrell in Manshantucket, Connecticut in approximately 2019. These purchases are the "Products" for the purposes of this section.

46.     The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

47.     Plaintiff Charron believed he was purchasing high-quality Products, each made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products were inconsistent with sustainable practices or with being "environmentally sound."

48.     Prior to purchasing the Products, Plaintiff Charron saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's

- 21 -

unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

49.     Additionally, Plaintiff Charron intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### b.     Lyle Liberman

50.     Plaintiff Lyle Liberman, between the start of the class period until around August 2019, was a citizen of the State of New York and resident of New York City. From around September 2019 to the end of the class period, Plaintiff was a citizen of the State of Connecticut and resident of Greenwich.

51.     While a resident in New York, Plaintiff Liberman bought online two pairs of Merrell Moab hiking boots with Gore-Tex Fabric from Merrell, and one Marmot rain jacket with Gore-Tex Fabric from BackCountry. These purchases took place in 2018 and 2019. While a resident in Connecticut, Plaintiff bought the following biking gear between 2023 and 2024 that had Gore-Tex Fabric: C5 Bib Shorts from Amazon; cycling gloves and bike shorts from eBay, and a thermal riding jacket C-5 from Poshmark. Both the New York and Connecticut purchases are the "Products" for the purposes of this section. Based on his purchases, Plaintiff Liberman intends to seek appointment as class representative for both the New York and Connecticut classes.

52.     The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

53.     Plaintiff Liberman believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the

Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

54.    Before buying the Products, Plaintiff Liberman saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

55.    Plaintiff Liberman also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 4.    District of Columbia Plaintiffs

#### a.    Graham Hulsey

56.    Plaintiff Graham Hulsey, at all relevant times, was a citizen and a resident of the District of Columbia. He bought online a pair of Solomon hiking boots with Gore-Tex Fabric from Nordstrom in 2022. He also bought online an Outdoor Research rain jacket with Gore-Tex Fabric from Backcountry in 2023. These purchases are the "Products" for the purposes of this section.

57.     The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

58.     Plaintiff Hulsey believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could have PFAS, and could leach PFAS during in normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

59.     Before buying the Products, Plaintiff Hulsey saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

60.     Plaintiff Hulsey also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### b.    Ian Schaaf

61.    Plaintiff Ian Schaaf, at all times relevant hereto, was a citizen and resident of the District of Columbia. He purchased a Castelli Transition 2 Jacket with Gore-Tex Fabric online from bikecloset.com on October 3, 2023 and Castelli Intenso UL Shoecover online from bikecloset.com on November 4, 2022. Plaintiff also purchased a Castelli Gavia Rain Jacket with Gore-Tex Fabric from Castelli in the District of Columbia on December 31, 2024, Castelli Estremo Gloves with Gore-Tex Fabric from Castelli in the District of Columbia on December 11, 2024, and Castelli Estremo WS Cap with Gore-Tex Fabric from Castelli in the District of Columbia on December 12, 2024. These purchases are the "Products" for the purposes of this section.

62.    The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

63.    Plaintiff Schaaf believed he was purchasing high-quality Products, each made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products were inconsistent with sustainable practices or with being "environmentally sound."

64.    Prior to purchasing the Products, Plaintiff Schaaf saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued

- 25 -

use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

65.    Additionally, Plaintiff Schaaf intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**5.    Florida Plaintiffs**

**a.    Justin Collins**

66.    Plaintiff Justin Collins, at all relevant times, was a citizen of the State of Florida and a resident of Lynn Haven, Florida. He bought a raincoat/jacket with Gore-Tex Fabric from a postal vendor in Florida in about 2020 or 2021. Plaintiff also bought waterproof shoes with Gore-Tex Fabric from a postal vendor in Florida in about 2020 to 2022. These purchases are the "Products" for the purposes of this section.

67.    The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

68.    Plaintiff Collins believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

69.    Before buying the Products, Plaintiff Collins saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

70.    Plaintiff Collins also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**b.    Joseph Contois**

71.    Plaintiff Joseph Contois, at all relevant times, was a citizen of the State of Florida and a resident of Jacksonville, Florida. He bought an REI ("Recreational Equipment, Inc.") rain jacket with Gore-Tex Fabric from an REI store in Florida in about 2022. Plaintiff also bought Solomon hiking boots with Gore-Tex Fabric from an REI store in Florida in about 2018 or 2019. These purchases are the "Products" for the purposes of this section.

72.    The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

73.    Plaintiff Contois believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the

- 27 -

Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

74.     Before buying the Products, Plaintiff Contois saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

75.     Plaintiff Contois also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 6.     Illinois Plaintiffs

#### a.     Adrian Washington

76.     Plaintiff Adrian Washington, at all relevant times, was a citizen of the State of Illinois and a resident of Des Plaines, Illinois. He bought a North Face rain jacket with Gore-Tex Fabric at The North Face store in Skokie, Illinois, in about 2018 or 2019. This purchase is the "Product" for the purposes of this section.

77.    The Gore-Tex Fabric in the Product was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

78.    Plaintiff Washington believed he was buying a high-quality Product made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

79.    Before buying the Product, Plaintiff Washington saw and was exposed to the Product labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

80.    Plaintiff Washington also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### b.    Michael Barnett

81.    Plaintiff Michael Barnett, at all relevant times, was a citizen of the State of Illinois and a resident of Edwardsville, Illinois. He bought multiple North Face Antora jackets with Gore-Tex Fabric from a North Face store in Illinois in about 2022 and 2024. Plaintiff also bought Arc'teryx Kopec Shoes and Balaclava with Gore-Tex Fabric from Arc'teryx directly in Illinois in about 2024. These purchases are the "Products" for the purposes of this section.

82.    The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

83.    Plaintiff Barnett believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

84.    Before buying the Products, Plaintiff Barnett saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading,

and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

85. Plaintiff Barnett also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 7. Minnesota Plaintiffs

#### a. Scott B. Johnson

86. Plaintiff Scott B. Johnson, at all relevant times, was a citizen of the State of Minnesota and a resident of Minneapolis, Minnesota. He bought Danner Sharptail hiking boots with Gore-Tex Fabric at a Scheels store in Minnesota in or around September 2024. This purchase is the "Product" for the purposes of this section.

87. The Gore-Tex Fabric in the Product was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

88. Plaintiff Johnson believed he was buying a high-quality Product made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

89. Before buying the Product, Plaintiff Johnson saw and was exposed to the Product labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common

Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

90.     Plaintiff Johnson also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**8.     New York Plaintiffs**

**a.     Richard Lee**

91.     Plaintiff Richard Lee, at all relevant times, was a citizen of the State of New York and a resident of Brooklyn, New York. He bought a rain cover with Gore-Tex Fabric from Amazon.com in New York around May 2024. This purchase is the "Product" for the purposes of this section.

92.     The Gore-Tex Fabric in the Product was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

93.     Plaintiff Lee believed he was buying a high-quality Product made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

94.     Before buying the Product, Plaintiff Lee saw and was exposed to the Product's labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the

packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Product or would have paid less for it. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

95.    Plaintiff Lee also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### b.    Jonathan Kelcourse

96.    Plaintiff Jonathan Kelcourse is a citizen of the State of Illinois and a resident of Indianapolis, Indiana, but spends time at his family's vacation home in Claryville, New York. While staying at the vacation home, Plaintiff bought ASOLO boots from Morgan Outdoors in New York on January 6, 2024. This purchase is the "Product" for the purposes of this section.

97.    The Gore-Tex Fabric in the Product was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

98.    Plaintiff Kelcourse believed he was buying a high-quality Product made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

- 33 -

99.     Before buying the Product, Plaintiff Kelcourse saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

100.    Plaintiff Kelcourse also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 9.    Washington Plaintiffs

#### a.    Vincent Bozaan

101.    Plaintiff Vincent Bozaan, at all relevant times, was a citizen of the State of Washington and a resident of Rockford, Washington. He bought a Filson Neoshell Reliance Rain Jacket with Gore-Tex Fabric from Filson in Washington on November 28, 2020. Plaintiff also bought Danner Super Rain Forest Boots 11500 with Gore-Tex Fabric online from Workingperson.com on December 28, 2021, Danner Marine Expeditionary Boots with Gore-Tex Fabric online from Moosejaw.com on June 6, 2022, and Danner Marine Expeditionary Boots with Gore-Tex Fabric online from Danner.com on July 29, 2022. These purchases are the "Products" for the purposes of this section.

102.    The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

103.    Plaintiff Bozaan believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

104.    Before buying the Products, Plaintiff Bozaan saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

105.    Plaintiff Bozaan also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**b.    Michael Kundu**

106.    Plaintiff Amitava Michael Kundu, at all relevant times, was a citizen of the State of Washington and a resident of Lake Stevens, Washington. He bought multiple North Face Summit Series Jackets, garments, and gear with Gore-Tex Fabric from The North Face in Seattle, REI in Seattle and Lynnwood, Patagonia in Seattle, Outdoor Research in Seattle, and through Amazon.com in Washington from 2018 through 2024. Plaintiff also bought Outdoor Research gaiters, bivy sacks, and technical mittens with Gore-Tex Fabric from the Outdoor Research store in Seattle, The North Face store in Seattle and Outlet in Marysville, Washington, in about 2018 through 2024. These purchases are the "Products" for the purposes of this section.

107.    The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

108.    Plaintiff Kundu believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

109.    Before buying the Products, Plaintiff Kundu saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed

- 36 -

these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

110. Plaintiff Kundu also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### c.    Micah Mason

111. Plaintiff Micah Mason, at all relevant times, was a citizen of the State of Washington and a resident of Spokane Valley, Washington. He bought online Volcom snow pants with Gore-Tex Fabric, from Evo in about Fall 2021. This purchase is the "Product" for the purposes of this section.

112. The Gore-Tex Fabric in the Product was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

113. Plaintiff Mason believed he was buying a high-quality Product made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product contradicted sustainable practices or with being "environmentally sound" or with being consistent with "protecting the planet and people."

114. Before buying the Product, Plaintiff Mason saw and was exposed to the Product labeling at point-of-sale, which was similar to the Hang Tags described. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently

- 37 -

degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

115.    Plaintiff Mason also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**10.      West Virginia Plaintiff**

**a.      Wesley Ornick**

116.    Plaintiff Wesley Ornick, at all relevant times, was a citizen of the State of West Virginia and resident of Morgantown, West Virginia. He bought a Mountain Hardware Sub Zero Parka with Gore-Tex Fabric from Backcountry in West Virginia in about 2022 or 2023. Plaintiff also bought Mountain Hardware Gloves with Gore-Tex Fabric from Backcountry in West Virginia in 2018. These purchases are the "Products" for the purposes of this section.

117.    The Gore-Tex Fabric in the Products was made in Maryland by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating in Maryland. The ePTFE membrane manufacturing process and the DWR coating application both involve PFAS.

118.    Plaintiff Ornick believed he was buying high-quality Products, each made with Gore-Tex Fabric. Never at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could have PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products contradicted sustainable practices or

with being "environmentally sound" or with being consistent with "protecting the planet and people."

119. Before buying the Products, Plaintiff Ornick saw and was exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff had any disclosure about Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. The Common Omissions and Misrepresentations misled Plaintiff as to Gore's continued use of PFAS. Had Defendant revealed these Common Omissions and Misrepresentations, Plaintiff would not have bought the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, caused Plaintiff out-of-pocket loss.

120. Plaintiff Ornick also intends to buy additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**B.     Defendant W.L. Gore & Associates**

121. Defendant W.L. Gore & Associates is a Delaware corporation, with its principal place of business and headquarters at 555 Paper Mill Road, Newark, Delaware 19711.

122. Gore was founded in 1958 by Wilbert Gore and his wife Genevieve. Before founding Gore, Wilbert Gore spent about 16 years at DuPont, where he held various technical roles, including work in fluoropolymer research.

123. Gore is a multinational company that specializes in manufacturing products made from fluoropolymers with 36 manufacturing plants in the United States, as well as facilities in the United Kingdom, Germany, the Netherlands, Japan, and China, with offices in over 25 countries

- 39 -

around the world.[16] Gore is divided into at least four divisions: (i) industrial products, (ii) electronic products, (iii) medical products, and (iv) fabrics. The majority, if not all, of these divisions are or were involved with PFOA-containing PTFE products.

124.    Gore is best known for making Gore-Tex Fabric. And most of Gore's Gore-Tex Fabric is purchased by other outdoor apparel manufacturers who then incorporate it into their own products and sell it via their retail network. Examples of these manufacturer-retailer partners include Brooks, Burton, Dakine, Dainese, Danner, Norrona, Nike, Patagonia, Rab, Solomon, LL Bean, The North Face, REI Co-op, Teva, and more. Estimated annual revenues received by Gore for its Gore-Tex Fabric are around $4.8 billion.

125.    Gore furnished its misleading information about Gore-Tex Fabric to major retailers and apparel manufacturers with the understanding that these manufacturers and retailers would disseminate the Common Omissions and Misrepresentations to consumers in Maryland and throughout the United States.

### IV.    FACTUAL ALLEGATIONS

**A.    Gore-Tex Fabric is a waterproof, yet breathable, textile commonly used in outdoor clothing and gear.**

126.    All Gore-Tex Fabric are manufactured in a uniform and identical way and have three layers and a diagram of these layers can be found below.[17] The outer material layer is to protect the membrane and give extra durability to the jacket. The inner material layer helps to distribute the moisture built up inside the jacket from sweat and then distributes it across a wide surface area, enabling it to evaporate and pass through the Gore-Tex membrane.

---

[16] *Gore Locations*, Gore, https://www.gore.com/locations (last accessed June 16, 2025).

[17] *The Gore-Tex Membrane: What it is, how it works, and why you need it*, Gore-Tex (Jan. 12, 2022), https://www.gore-tex.com/en_uk/blog/the-gore-tex-membrane-what-it-is-how-it-works-and-why-you-need-it (last accessed June 16, 2025).



127.    The Gore-Tex membrane is in the middle of the other two layers. Its role is to let water vapor through from the inside while keeping water from the outside, out. Until recently Gore-Tex exclusively used an ePTFE (expanded polytetrafluoroethylene) membrane.[18] Products made with ePTFE are marketed to have excellent breathability, waterproofing, and durability attributes.

128.    In addition to these three layers, an additional coating sits on the top—the DWR (Durable Water Repellent) treatment. The DWR coating provides a slippery layer on top of the face fabric, which lets water roll off it as opposed to water being absorbed by fabric—an effect known as "beading." The primary purpose of the ePTFE Gore-Tex Membrane and the DWR Treatment is to increase the durability and water resistance of a product.

---

[18] In 2018, Gore created an additional product line using a different type of membrane called ePE membrane, but those products are not at issue in theis litigation. *See* Section IV.F., *supra.*

**B.      Gore-Tex Fabric is manufactured using a "forever chemical" with a toxic legacy.**

129.     PFAS, also known as per- and polyfluoroalkyl substances, refers to a group of thousands of human-made chemicals that have been used since the 1940s. PFAS compounds have very strong carbon-fluorine bonds, or chains. These bonds gives PFAS their properties like resistance to heat, chemicals, and degradation. Because of their extreme resistance to degradation in the environment and/or in living organisms, PFAS have been classified as "forever chemicals"—meaning they break down very slowly in nature and are potentially dangerous to human health.[19] PFAS are also characterized by having a hydrophobic (or water-hating) compound tail and a hydrophilic (or water-liking) compound head. PFAS can repel water, oil, stains, and some can remain stable even at extreme temperatures.

130.     Below is a table originally produced by the State of California's Department of Toxic Substances Control ("DTSC") that explains the relationship between different types of PFAS.[20] DTSC created this table based on chemical structure and the guidance from the Organization for Economic Co-operation and Development ("OECD"). Upon information and belief, Gore currently uses the compounds in yellow in making Gore-Tex Fabric. Historically, Gore also used the compounds in red, but according to information and belief, these have been phased out of Gore's manufacturing process: [21]

---

[19] This lawsuit alleges that Gore deceived consumers by not disclosing the extent of environmental damage caused by the manufacturing of Gore-Tex Fabric. It is not alleging health or safety claims as to Gore-Tex Fabric itself.

[20] Consumers often use the terms "PFAS" and "PFC" interchangeably, but according to the DTSC, it, along with other regulators, use the term "PFASs" as it "has been widely adopted by the scientific community," and intentionally omit the use of the term PFC, characterizing it as an "older term" that can be ambiguously defined.

[21] Any use of highlighting or red text was added by counsel to help visualize the relationships between the chemicals displayed in the table and reflects the written conclusions made by the



Figure 1. *The different subclasses of PFASs (from OECD, 2015)*

131.    The top half of the table displays non-polymer PFASs. Non-polymer PFAS are generally divided into two subclasses: perfluoroalkyl substances (PFAAs), in which all carbon atoms in the alkyl chain are fully fluorinated, and polyfluoroalkyl substances, in which one or more, are fluorinated. Fluorine can be very toxic, especially at high levels of exposure or if ingested as a gas. Most researchers over the past few decades have focused on the environmental and health impacts of perfluoroalkyl acids subgroup (PFAAs), which includes perfluoroalkyl *carboxylic* acids (PFCAs) such as perfluorooctanoate (PFOA), and perfluoroalkyl *sulfonic* acids (PFSAs) such as perfluorooctane sulfonate (PFOS). PFOS was a key ingredient in waterproofing fabrics and carpets, while PFOA was used in the production of PTFE or Teflon.

---

Department of Toxic Substances Control in their October 2017 White Paper on Per-Poly-FluoroAlkyl Substances (PFASs). https://dtsc.ca.gov/.

132.    According to Gore, PFOA was also historically used to make ePTFE and PFOA residuals could be measured at trace levels.[22] But Gore transitioned away from PFOA starting in 2013 as part of a voluntary industry-wide phase out led by the U.S. Environmental Protection Agency. Upon information and belief, Gore now uses GenX Chemicals (i.e., hexafluoropropylene oxide dimer acid ("HFPO-DA") and its ammonium salt) instead of PFOA in its manufacturing process for Gore-Tex Fabric. But significant evidence suggests that GenX Chemicals (like other PFAS) are toxic to humans, the environment, and wildlife.

133.    The bottom half of the table displays polymer PFASs. The three subclasses of polymers include fluoropolymers, polymeric perfluoropolyethers (PFPE), and side-chain fluorinated polymers. Examples of these PFASs include polytetrafluoroethylene (PTFE) and expanded polytetrafluoroethylene (ePTFE).

134.    PTFE is highly suitable for products that need to resist damage from harsh substances. An example of PTFE is Teflon. ePTFE, or expanded polytetrafluoroethylene, is a type of PTFE that is also one of the most fluorinated polymers at 76% fluorine by weight.[23] ePTFE is softer and more flexible than conventional PTFE because ePTFE membranes also have millions of microscopic pores that are 20,000 times smaller than a water droplet, but 700 times larger than a water vapor molecule. The Gore-Tex Fabric membrane is currently manufactured using ePTFE and Gore continues to apply a DWR Treatment that also contains PFAS. Gore routinely

---

[22] PTFE Facts, Gore, available at https://www.gore.com/system/files/2023-04/Gore-PTFE-Facts-March-2022.pdf (last accessed June 16, 2025).
[23] Refers to the degree of fluorination per carbon atom in the polymer chain. In PTFE each carbon atom is bounded to two fluorine atoms, which is the maximum fluorination for a stable linear carbon backbone.

acknowledges that both PTFE and ePTFE are types of PFAS.[24] Gore also admits that it uses PFAS as a standard part of the ePTFE manufacturing process and the DWR application process for all products created with the ePTFE membrane, including those bought by the named plaintiffs and class members.[25]

135.    Notwithstanding the phase-out of PFOA and PFOS in the United States and the introduction of shorter-chain PFASs, scientists still believe that the widespread use of any chemical in the PFAS class is still dangerous. This is because even this new generation PFAS like GenX have similar structures and raise similar health and safety issues related to persistence, toxicity, and mobility. Studies show that the shorter-form compounds are just as persistent as the long-chain chemicals, or that they eventually breakdown into products that are as persistent.[26] In addition, they are more mobile in the environment and may be more difficult to remove from drinking water. And because not enough information is available on their toxicity or even their

---

[24] *Gore's Commitment to Material Stewardship*, Gore, https://www.gore.com/about/materials-stewardship (last accessed June 16, 2025).

[25] *See, e.g.*, *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

[26] Short-chain PFAS replacements were previously thought to present a lower likelihood of bioaccumulation and toxicity compared to long-chain PFAS, such as PFOA and PFOS. But, newer research indicates that several replacement PFAS can exhibit similar toxic properties and are associated with similar health outcomes and target organ effects as long-chain PFAS. *See Characterizing PFAS Chemistries, Sources, Uses, and Regulatory Trends in U.S. and International Markets*, Consumer Product Safety Commission, citing Gomis et al., 2018; Wang et al., 2015; U.S. EPA, 2021a; U.S. EPA, 2021b, https://www.cpsc.gov/s3fs-public/CPSC-PFAS-WhitePaper.pdf (last accessed June 16, 2025).

chemical structures, scientific experts from all over the world have hesitated to conclude that any PFAS is safe enough to be unregulated or used without restriction.[27]

136.    For example, the Madrid Statement on Poly- and Perfluoroalkyl Substances (PFAS) is a scientific declaration released in 2015 by over 200 scientists from 38 countries.[28] The Madrid Statement calls for a precautionary approach to all types of PFAS, urging governments, industries, and consumers to reduce and eventually phase out their use. It also highlights concerns about newer short-chain PFAS being used as replacements for older, regulated substances like PFOA and PFOS. The scientists also warn these short-chain PFAS are also persistent and pose risks to human and environmental health, and that replacing one PFAS with another is not a sustainable solution.

**C.    PFAS pose unique and devastating dangers to the environment.**

137.    Using any PFAS in consumer manufacturing is controversial due to the toxicity of the chemicals, their highly mobile nature, and their inability to break down over time. For example, PFAS can enter the soil through PFAS-containing pesticides or contaminated sewage sludge. These chemicals can influence soil pH and structure, as well as harm the small organisms that maintain soil function. PFAS has also been found in rivers, lakes, reservoirs, and seas. As demonstrated in the infographic below, not only does this harm aquatic wildlife, but it also leads to contamination of drinking water supplies:

---

[27] *Factsheet on PFASs in Consumer Products: Key Points for Decision Makers, Safer Consumer Products* (Aug. 2023), available at https://dtsc.ca.gov/wp-content/uploads/sites/31/2023/09/PFAS-Factsheet.pdf (last accessed June 16, 2025).

[28] Blum, et al., *The Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)*, Environmental Health Perspectives, Volume 23, Issue 5, pp. A107-A111, available at https://ehp.niehs.nih.gov/doi/10.1289/ehp.1509934 (last accessed June 16, 2025).



138.    In addition, when consumers eventually throw out their worn-out Gore-Tex Fabric products in their municipal garbage, which many are likely to do because Gore does not advise consumers on how to properly dispose of them, those products will likely eventually end up in a landfill to be incinerated. And studies show that Gore-Tex Fabric emits harmful PFAS into the air and water during the municipal solid waste incineration process.[29] PFAS can also make its way into drinking water sources through consumer use, such as when PFAS-coated apparel is washed or dry-cleaned, as depicted in the infographic below:

---

[29] Mohammednoor Altarawneh, et al., *Thermal decomposition of perfluorinated carboxylic acids: Kinetic model and theoretical requirements for PFAS incineration*, Chemosphere (Jan. 2022), https://pubmed.ncbi.nlm.nih.gov/34388878/.



139.    Exposure to even very low levels of certain PFASs is now known to cause harm. For example, drinking water guidance levels for the two most studied PFASs – PFOA and PFOS – have maximum contamination limits thousands of times lower than they were a decade ago in order to mitigate the impact these chemicals can have on the environment and water systems.[30]

140.    Due to the inherent harms associated with PFAS, states have reduced or eliminated their use in consumer manufacturing. According to a 2024 study from Safer States, a national alliance of environmental health organizations, at least 36 states either have or plan to consider at least 450 bills on toxic chemical-related policies involving PFAS, plastics, and cosmetics as key areas.[31] And legislation in California and New York that restricts PFAS in apparel became effective January 1, 2025.[32]

---

[30] *Factsheet on PFASs in Consumer Products: Key Points for Decision Makers, Safer Consumer Products* (Aug. 2023), available at https://dtsc.ca.gov/wp-content/uploads/sites/31/2023/09/PFAS-Factsheet.pdf (last accessed June 16, 2025).

[31] *Safer States: Bill Tracker*, Safer States, https://www.saferstates.org/bill-tracker/?toxic_chemicals=PFAS (last accessed June 16, 2025).

[32] Cal. AB-1817 (Product safety: textile articles: perfluoroalkyl and polyfluoroalkyl substances (PFAS)), https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=202120220AB1817

**D.    Gore has long been aware of the environmental harm caused by PFAS.**

141.    Gore's founder was a former DuPont employee who maintained a close business relationship with DuPont. For decades, Gore bought APFO and PFOA from raw material suppliers such as DuPont and bought and/or used PTFE products from DuPont and 3M, which made, marketed, and sold these products.[33]

142.    In the 1990s, at least two former DuPont employees—Dr. Jack Hegenbarth and Richard Baillie—who possessed extensive knowledge of the risks associated with PFOA exposure, joined Gore as employees. So it is likely that Gore knew about the toxic nature of PFAS and the potential environmental risks posed by human these chemicals.

143.    In May 1984, DuPont held a meeting to address health and environmental concerns related to PFOA, the company's potential liability, available technologies that could control and reduce PFOA emissions from its manufacturing facilities, as well as potential replacement materials capable of eliminating more PFOA emissions from its operations.[34]

144.    In the early 1980s, Dr. Hegenbarth received many internal DuPont memoranda that discussed the health effects of PFOA exposure, such as the retention of PFOA in the blood, and the environmental impact of PFOA.[35]

---

(last accessed June 16, 2025); N.Y. PFAS in Apparel Law, https://dec.ny.gov/environmental-protection/help-for-businesses/pfas-in-apparel-law (last accessed June 16, 2025); https://www.saferstates.org/priorities/pfas/ (last accessed June 16, 2025).

[33] *See, e.g.*, *Robert W. Gore*, Science History Institute Museum & Library, https://www.sciencehistory.org/education/scientific-biographies/robert-w-gore/#:~:text=Bill%20often%20experimented%20in%20their,%2C%20electrical%2C%20and%20chemical%20properties (last accessed June 16, 2025); https://www.industry documents.ucsf.edu/chemical/docs/#id=mypw0228 (last accessed June 16, 2025).

[34] J.A. Schmid, Letter regarding C-8 Meeting Summary (May 23, 1984), https://cdn.toxicdocs.org/qd/qdNLdmnBdODEMemOG5vo96poj/qdNLdmnBdODEMemOG5vo96poj.pdf (last accessed June 16, 2025).

[35] *See, e.g.*, https://www.toxicdocs.org/search?q=Hegenbarth# (last accessed June 16, 2025).

145.    In the 1990s, Dr. Hegenbarth joined Gore and brought with him his extensive knowledge of the dangers associated with PFAS exposure. Dr. Hegenbarth led a broad range of Gore's research, development, and manufacturing activities, particularly those focused on PFAS-related issues and advancements in materials involving these chemicals.

146.    In 1996, Richard Baillie, a DuPont chemical engineer with extensive experience in the fluoropolymers operations, joined Gore. While at DuPont, Baillie received internal memoranda and reports that addressed concerns about PFOA exposure, efforts to identify less toxic replacements, and efforts to reduce PFOA environmental emissions.[36] At Gore, Mr. Baillie had a "key role for understanding and dealing with [the] PFOA issue."[37]

**E.    Gore faces multiple lawsuits related to PFAS exposure and cleanup.**

147.    Gore is currently a defendant in multiple lawsuits alleging environmental pollution and public health risks created by Gore's years of manufacturing PFAS in the state. These lawsuits collectively allege that Gore knowingly polluted the environment with PFAS, leading to significant health risks for residents in Maryland and beyond. More information on these lawsuits is included below:

- *State of Maryland v. W.L. Gore & Associates, Inc.* (Case No. 1:24-cv-03656). Here, the State of Maryland alleges that at least 13 of W.L. Gore's 14 facilities in Cecil County have soil, air, and groundwater contaminated with PFAS above maximum contamination limits. The state claims that the company knew about the dangers of these chemicals, but concealed that information from the public

---

[36] DuPont memorandum regarding C-8 Ammonium Perfluorooctanoate Fluorosurfactant Strategies and Plans (Sept. 28, 1994), https://www.industrydocuments.ucsf.edu/docs/#id=typw0228 (last accessed Jan. 28, 2025).

[37] Richard Baillie LinkedIn profile, https://www.linkedin.com/in/richard-baillie-8509206 (last accessed June 16, 2025).

and regulators and violated the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), amongst other state laws. It was filed on December 18, 2024.

- *Martin, et al. v. W.L. Gore & Associates, Inc.* (Case No. 1:24-cv-03549). Here, Plaintiffs Stephen and Cheryl Martin bring citizen suit claims under the Resource Conservation and Recovery Act alleging that Gore's operations have led to PFAS contamination affecting their property and health, seeking remediation and damages under federal environmental laws. It was filed on December 9, 2024.

- *Wolf, et al. v. W.L. Gore & Associates, Inc.* (Case No. 1:23-cv-00280). This class action lawsuit involves allegations of personal injuries caused by exposure to PFAS from Gore's Cherry Hill facility in Elkton, Maryland. The plaintiffs claim that the company was negligent in managing hazardous substances, leading to health issues among residents. It was filed on February 1, 2023.

**F.    In response to significant concerns about environmental and health impacts, Gore promised consumers it was removing PFAS from its products and manufacturing processes.**

148.    In response to pressure from environmental groups, concerned scientists, and government regulators, Gore eventually realized that its previous status quo of ignoring PFAS issues was no longer viable. So, on January 31, 2017, Gore announced that it had set a goal of eliminating PFCs of Environmental Concern by 2023 via a three-pronged strategy. First, Gore was to identify and eliminate "PFCs of Environmental Concern" from both its fabrics and production systems. Second, Gore committed to developing and implementing safer alternatives to PFCs. Finally, Gore promised that it would provide updates on its progress and challenges with

- 51 -

stakeholders, including customers, industry partners, and regulatory bodies.[38] Gore recently extended the deadline to the end of 2025. Hence, Gore's admission that it uses PFAS during most of the class period, and that it knew consumers found such use to be material to consumers, makes Gore's Common Omissions and Misrepresentations even more deceptive.

149.    Shortly after Gore's announcement, state regulators and environmental scientists discussed whether Gore's actions would amount to much of a difference—or if this was simply a performative attempt by Gore at greenwashing. Below is an e-mail between EPA staff, members of the DTSC, and several academics discussing Gore's PFC EC strategy and whether the changes will cause less environmental harm.

**From:** Tom Bruton <tbruton@berkeley.edu>
**Sent:** Tuesday, February 14, 2017 10:53 AM
**To:** Dave Andrews <dandrews@ewg.org>
**Cc:** Lindstrom, Andrew <Lindstrom.Andrew@epa.gov>; Laurel Schaider <schaider@silentspring.org>; Strynar, Mark <Strynar.Mark@epa.gov>; Arlene Blum <arleneb@lmi.net>; Balan, Simona@DTSC <Simona.Balan@dtsc.ca.gov>; Graham Peaslee <gpeaslee@nd.edu>
**Subject:** Re: Gore eliminating hazardous PFCs

Thanks for the interesting discussion.  I have a few points to add:

From my reading of Gore document and Manfred's comments, it seems they are counting on continued use of PTFE and that they really believe they can do this without using fluorosurfactant processing aides.

If they do continue using fluorosurfactant processing aides, I don't believe that tightening up the manufacturing process so that it is "zero-discharge" is meaningful.  DuPont's Fayetteville, NC plant was supposed to be leak-proof with respect to fluorosurfactants, but we know that is not the case.

Similarly, I don't see that moving from PTFE to PVDF would be an improvement.  PVDF was historically manufactured using PFNA instead of PFOA (http://link.springer.com/article/10.1007/s11356-016-8243-3)

Would anyone else be interested in engaging Gore in a conversation around these issues?

Tom

--
Tom Bruton
Science Policy Fellow
Green Science Policy Institute
tom@greensciencepolicy.org
www.greensciencepolicy.org

---

[38] *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

150.    Others were especially skeptical of Gore's decision to unilaterally define which PFAS were included as a "PFC for Environmental Concern." According to one scientist, Gore's PFC* Free strategy was "a weak attempt to define themselves as better or not so bad while at the same time preserving the market share and brand name." And that Gore was more interested in taking "total control of this evolving situation [to] string out the use and profits from their slightly adjusted products for a very long time." These comments also demonstrate the deceptive nature of Gore's Common Omissions and Misrepresentations because Gore knew that it was using PFAS for most of the class period and that Gore also knew that Gore's use of PFAS was material to consumers.

From: "Lindstrom, Andrew" <Lindstrom.Andrew@epa.gov>
Date: Tuesday, February 14, 2017 at 8:35 AM
To: Laurel Schaider <schaider@silentspring.org>, "Strynar, Mark" <Strynar.Mark@epa.gov>, Arlene Blum <arleneb@lmi.net>, Dave Andrews <dandrews@ewg.org>, "Balan, Simona@DTSC" <simona.balan@dtsc.ca.gov>, Thomas Bruton <tbruton@berkeley.edu>, Graham Peaslee <gpeaslee@nd.edu>
Subject: RE: Gore eliminating hazardous PFCs

Laurel,

I agree with your observation that this is the time to move beyond PFAS-containing apparel.

To me, this looks like a weak attempt to define themselves as better or not so bad while at the same time preserving the market share and brand name.

As long as they control the narrative, they pretty much have total control of this evolving situation and can string out the use and profits from their slightly adjusted products for a very long time. I don't think it is possible to make fluoropolymers without release on monomers, catalysts, or solubilizers.

The key question for me is who defines what "PFC of Environmental Concern" means?

I'm concerned about all PFAS. It's not Green Chemistry – they are immortal.

This is the time to move beyond PFAS in clothing and as many other products as possible.

It can be done. This is the same thing as our continued dependence on fossil fuels. They people who are invested in the status quo don't want real change.

Thank you,
Andy

151.    This skepticism of greenwashing actions like those of Gore continues to this day. For example, on June 10, 2025, a group of 20 prominent scientists issued a statement criticizing efforts by industry actors to narrow the chemical definition of per- and polyfluoroalkyl substances

(PFASs).[39] They caution that attempts [like Gore's] to redefine PFASs to "exclude specific subgroups [like PTFE] may be motivated by political or economic interests rather than scientific evidence." These scientists also argue that such attempts could undermine public health and environmental protections by excluding certain chemical subgroups from regulation.

**G.    Gore misleads consumers about its use of PFAS in its products and during the manufacturing process for Gore-Tex Fabric by its Common Omissions and Misrepresentations.**

152.    Gore uses its Hang Tags to create the overall impression to consumers that Gore is taking serious and measurable steps to reduce the environmental impact of manufacturing Gore-Tex Fabric. But this impression deceives consumers because Gore actively conceals and fails to fully disclose to consumers the following Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS, so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

---

[39] Gabriel Sigmund, et al., *Scientists' Statement on the Chemical Definition of PFASs*, American Chemical Society Publications (June 10, 2025), available at https://pubs.acs.org/doi/10.1021/acs.estlett.5c00478 (last accessed June 16, 2025).

**1.      Gore hides its continued use of PFAS to make its Gore-Tex Fabric.**

153.    Gore misrepresents and fails to disclose that it still uses several types of PFAS and fluorinated polymers as part of the manufacturing process for the ePTFE membrane, which in turn means that PFAS was used to make the products purchased by the named plaintiffs and class members. For example, most definitions of PFAS from academics, regulators, and consumers include the compound PTFE (one of the most fluorinated polymers). Even Gore admits that PTFE is a type of PFAS.[40]

154.    Then to extend PTFE into ePTFE, companies like Gore use a different type of PFAS to act as a surfactant or dispersing agent. The surfactant helped to keep the polymer particles suspended in water during the relevant chemical reactions and ensure product consistency. Historically, Gore used PFOA, but throughout the class period, Gore used GenX as a dispersing agent. But GenX is still considered a PFAS that can induce significant environmental harm and harm to human health, even at relatively low concentrations. *See* section IV.B., *infra*. And Maryland's investigation of areas near Gore's manufacturing facilities also show elevated levels of PFOA and GenX compounds. *See* section IV.H.2., *supra*.

155.    The second way that Gore currently uses PFAS to make its Gore-Tex Fabric involves the Durable Water Repellant ("DWR") layer. Many Gore-Tex products, including those bought by the named plaintiffs and class members, are treated with a DWR coating to enhance water resistance. But these coatings still have short-chain PFAS compounds.[41] And while these

---

[40] *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

[41] *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at

short-chain PFAS may be less persistent than their long-chain counterparts, they still pose environmental and health risks. *See* section IV.C., *supra*.

> **2.      Gore's manufacturing processes have contaminated areas near its facilities with extremely high levels of PFAS.**
>
> **a.      Maryland has uncovered significant evidence of environmental harm in the areas near Gore manufacturing hubs.**

156.     Because of the mounting evidence and concerns of the health and environmental effects of PFAS, Gore has reassured its customers that its products are "non-toxic and safe for the user" and pose no threat to the environment.[42]

157.     The citizens of Cecil County, Maryland, would probably beg to differ as recent testing suggests that Gore has contaminated parts of Cecil County via its PFAS manufacturing processes. Upon information and belief, Gore has used and continues to use PTFE in the manufacturing process at eleven Gore Facilities in Elkton, Cecil County, Maryland. Specifically, Gore used PTFE aqueous dispersions at Cherry Hill, Fair Hill, Appleton South, all three Elk Creek facilities, and at the Elk Mills 1 facility. In addition, the Appleton East, Appleton North, Appleton Central, and Elk Mills 5 facilities processed solvents, coatings, and other materials known to contain APFO/PFOA.

158.     On February 16, 2023, the Maryland Department of the Environment sent a letter to Gore identifying it as a responsible party in relation to the Cherry Hill facility and asked for Gore to conduct or take part in a systematic investigation of PFAS contamination at the facility and the surrounding area. Samples were taken of areas next to Gore's Cherry Hill and Fair Hill

---

https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

[42] *Responsibility - Our Products are Environmentally Sound and Safe to Wear*, Gore, https://web.archive.org/web/20190323195518/https://www.gore-tex.com/technology/responsibility (last accessed June 16, 2025).

locations and the facilities themselves. Samples taken from the Spring 2023 through Fall 2024 consistently showed PFOA contamination above the 4 ppt Maximum Contamination Limit ("MCL") at several locations, and some samples were as high as 39 ppt. According to the Maryland attorney-general's office, these sampling results also indicated the presence of contamination with other PFAS carboxylic acids, including PFHxA and PFHpA.

159.    Data collected by Maryland regulatory authorities also show exceedingly high levels of PFOA around the Cherry Hill and Fair Hill facilities. For example, at addresses on Singerly Road, directly across from the Cherry Hill site, multiple homes showed concentrations of PFOA in their drinking water as high as 800 ppt. The surface water in a small stream nearby returned a result of 740 ppt PFOA. Near the Fair Hill site, PFOA was found in drinking water sources above the 100 ppt PFOA limit. And at the Appleton South site, several samples of on-site groundwater had PFOA concentrations well above 1,000 ppt. These locations are also contaminated with PFHpA, PFHxA, and other PFAS. According to Maryland's attorney general, elevated levels of PFOA have been found around each of the Gore Facilities that has been previously tested.

160.    In part due to these results, the attorney general of Maryland sued Gore for PFAS contamination of the states' drinking water, groundwater, surface water, soil, and other natural resources near Gore's facilities in and around Elkhorn, Maryland. But Gore does not disclose to consumers that Gore's manufacturing process contributed to this egregious contamination.

   b.    **Gore's own documents corroborate Maryland's findings of elevated PFAS in adjoining areas.**

161.    Gore's own documents show that its activities have also led to high levels of PFAs in various water sources surrounding the site. For example, in 2024 Gore retained Arcadis U.S. Inc. to investigate the existence of PFAS in and around Gore's manufacturing hubs in Maryland

and prepare a Preliminary Site Investigation Data Summary Report.[43] According to this Report, there are still high levels of PFAS in various water sources around Gore's Maryland-based manufacturing hubs.[44] Moreover, as seen in the below excerpt Report, not only did many areas record levels way above 100 ppt PFO, but some levels recorded were as high as 1300 ng/l, 790 ng/l, and 1800 ng/l.[45] This Report also concluded that the presence of PFAS in groundwater at the Cherry Hill site is primarily associated with Gore's "use and handling of PTFE."[46]

---

[43] Arcadis U.S., Inc., "W. L. Gore Cherry Hill Property Preliminary Site Investigation Data Summary Report," (dated May 6, 2024) (on file with the Maryland Department of Environment, requested through Public Information Act Request No. 2025-00432, Maryland Department of Environment, Feb. 13, 2025).

[44] *See id.* at Figs. 6-7, Tables 2-4, Attachments B-D.

[45] *See id.* at 5. A concentration of 1 ppt means there is 1 unit of the substance for every 1,000,000,000,000 (one trillion) units of the medium. In the context of chemical analyses, (1 ng/kg) for solids or 1 nanogram per liter (1 ng/L) for liquids. Or in other words, 1 ppt = 1 ng/kg = 1 ng/l.

[46] *See id.* at pp. 1, 4-5.

On behalf of W. L. Gore & Associates, Inc. (Gore), Arcadis U.S., Inc. (Arcadis) has prepared this Preliminary Site Investigation Data Summary Report (Preliminary Report) for the Cherry Hill Property located at 2401 Singerly Road in Elkton, Maryland (the Site; **Figure 1**) to summarize investigations of potential per- and polyfluoroalkyl substances (PFAS) completed to date at the Site and to provide associated data. Following the completion of additional investigations in 2024, Gore will prepare a site investigation report, inclusive of a conceptual site model and data interpretations, for Maryland Department of the Environment (MDE) review.

## Background

The Site, which is located approximately 4 miles north of the Town of Elkton in Cecil County, Maryland (**Figure 1**), occupies approximately 20 acres and contains a greater than 300,000-square-foot manufacturing building (**Figure 2**). In addition to the Site, Gore owns adjacent land to the east, west, and south. Most of the adjacent land is leased for farming or is being developed as a solar energy field; the remaining land is undeveloped.

At the Cherry Hill facility, polytetrafluoroethylene (PTFE) purchased from external suppliers is processed into PTFE tapes and membranes. The majority of PTFE purchased for use at the Site has been in the form of fine powder/resin. This resin contains a trace residual of a processing aid used by Gore suppliers. Historically, this processing aid was ammonium perfluorooctanoate (APFO), which is the ammonium salt of perfluorooctanoate (PFOA). Gore also uses PTFE in an aqueous dispersion form. Like fine powder, the aqueous dispersion form also contains low levels of residual processing aid, including APFO historically. Over time, Gore has changed its raw materials and processes and engaged in continuous improvement of various measures that have addressed potential emission pathways from the Site. Although Gore has included a full suite of PFAS analytes for data collection, PFOA is the focus for investigations.

In correspondence to Gore dated February 16, 2023, the MDE Land Restoration Program requested a systematic investigation of potential PFAS contamination associated with the Site. In its response letter to MDE dated February 24, 2023, Gore indicated that it voluntarily agreed to conduct the MDE-described actions. As the first

### Groundwater Quality

Analytical laboratory reports and associated data review reports are provided in **Attachments C** and **D**, respectively. Results from the 15 temporary wells are provided in **Table 3**. Results for groundwater samples collected from permanent monitoring wells, as well as surface water results, are provided in **Table 4**. PFOA results for temporary wells are shown on **Figure 6**, and PFOA results for monitoring wells are shown on **Figure 7**.

Concentrations of PFOA in groundwater samples collected from temporary wells range from 7.5 nanograms per liter (ng/L) at TB-07 to 1,300 ng/L at TB-13 and TB-14. Concentrations of PFOA in groundwater samples collected from 13 of the 20 transition zone monitoring wells range from 18 ng/L at MW-18-58 to 1,700 ng/L at MW-13-40. In bedrock monitoring wells, concentrations of PFOA range from 110 ng/L in MW-06-58 to 310 ng/L in MW-08-131.

### Surface Water and Stormwater Management Pond Water Quality

Analytical laboratory report and data review report are provided in **Appendices C** and **D**, respectively. Surface water results are provided in **Table 4**. PFOA was detected at 93 ng/L in SW-01 (i.e., stormwater management and fire water supply pond) and 100 ng/L in SW-02 (i.e., drainage feature west of the facility) as shown on **Figure 7**.

162.    Yet Gore continues to not only use PTFE, but also expand its PTFE capabilities by installing new equipment such as ovens (which are used to make PTFE and are a main source of emissions) as recently as 2021. This is despite its continuous acknowledgement that Gore-Tex

- 59 -

based on the PFAS material resists deterioration and is inconsistent with Gore's claims it is transitioning to a non-PTFE based manufacturing process for its Gore-Tex membrane.

### 3.    Gore products leach PFAS into the environment via ordinary use.

163.    Studies also show that regular and intended use of ePTFE and/or DWR-treated products break down the PFAS treatments over time, leading to higher concentrations of PFAS in the product and higher levels of related contamination. For example, a 2020 study found that "weathering can have an effect on PFAS used in DWR of outdoor clothing, both on the PFAS profile and on the measured concentration."[47] PFAS concentrations "increased by 5- to more than 100-fold, while [PFAS] not detected in the original textiles were [later] detected in the weathered samples."[48]

164.    Some tests also show Gore-Tex Fabric exposed to rain can shed types of PFAS from the fabric itself (PFBA and some PFOA). This means that hikers taking their outdoor apparel on the trails are inadvertently shedding PFAS material straight into the pristine environments they are appreciating and seeking to protect. This also means that regular consumers are also inadvertently shedding PFAS into local water supplies while walking on city streets, spending time in their yards, or while enjoying city parks.

165.    Similarly, a 2023 study by Toxic-Free Future tested 13 jackets, including two GORE-TEX models purchased from REI. The analysis revealed high levels of total fluorine—up to 8%—indicating the likely presence of PFAS in both the membrane and surface treatments. The

---

[47] Ike van der Veen, Anne-Charlotte Hanning, Ann Stare, Pim E.G. Leonards, Jacob de Boer, Jana M. Weiss, *The effect of weathering on per- and polyfluoroalkyl substances (PFASs) from durable water repellent (DWR) clothing*, Chemosphere, Volume 249, June 2020, 126100. DOI: https://doi.org/10.1016/j.chemosphere.2020.126100 (last accessed June 16, 2025).

[48] *Id.*

study detected multiple fluorotelomer alcohols (C6–C12), including compounds phased out by Gore in 2013, suggesting that these older PFAS compounds persist in some Gore-Tex products.

166.   PFAS has even been collected at the top of Mt. Everest. One study,[49] published in *Science of the Total Environment* in 2020, investigated the presence of PFAS in snow and meltwater samples collected from Mount Everest's Khumbu Glacier. Researchers analyzed samples from several locations, including Everest Base Camp, Camp 1, Camp 2, and the Everest Balcony, making these some of the highest-altitude PFAS measurements ever recorded.

167.   The results revealed detectable levels of various PFAS compounds, such as PFOS (perfluorooctanesulfonic acid), PFOA (perfluorooctanoic acid), and PFHxA (perfluorohexanoic acid). The highest concentrations were found at Base Camp and Camp 2. These findings show that outdoor gear treated with PFAS for water- and stain-resistance—commonly used by climbers and trekkers—likely contributes to this contamination. The authors of the study contacted Gore with their results. In a statement provided to the researchers, a Gore spokesperson acknowledged that three of the four PFAS compounds detected in the Everest samples were used by Gore in the past and that traces of the fourth compound may still be detected in some of its products even today.[50]

### 4.   Gore's "PFC* Free Laminate" label misleads consumers by unilaterally excluding ePTFE and PTFE.

168.   Gore prominently states on the Hang Tag that the product includes a "PFC Free* Laminate" made by Gore. Gore also notes on its tag that "PFC Free*" refers to PFCs of Environmental Concern.

---

[49] Minor KR, et al., *Deposition of PFAS 'forever chemicals' on Mt. Everest*, Science of the Total Environment (Mar. 10, 2021), https://pubmed.ncbi.nlm.nih.gov/33353778/ (last accessed June 16, 2025).

[50] Murray Carpenter, *'Forever chemicals,' other pollutants found around the summit of Everest*, Washington Post (Apr. 17, 2021), https://www.washingtonpost.com/science/mt-everest-pollution/2021/04/16/7b341ff0-909f-11eb-bb49-5cb2a95f4cec_story.html.

169.    PFCs, or perfluorinated chemicals, is a term that some scientists use to refer to the group of toxic chemicals that includes PFOA and PFOS and other per- and polyfluoroalkyl substances (PFASs). Organizations that have used the abbreviation "PFCs," referring to perfluorinated chemicals, include U.S. EPA, U.S. Centers for Disease Control and Prevention (CDC) and the U.N. Organisation for Economic Co-operation and Development. EPA is now trying to use "per- and polyfluoroalkyl substances (PFASs)" rather than "perfluorinated chemicals (PFCs)" consistently to collectively describe PFOA, PFOS and the other chemicals in this group.[51]

170.    And yet, Gore created its own definition now called "PFC EC" or PFCs of Environmental Concern. Gore's unilateral definition of PFC EC excludes both PTFE and ePTFE. By changing the consistent consumer understanding of PFC to specifically exclude PTFE, Gore misleads consumers to believe that its products and manufacturing process do not have chemicals that are extremely harmful for the environment. Gore's Hang Tag also states its manufacturing process uses "non-fluorinated materials," even though Gore's membrane is made with ePTFE— one of the most fluorinated polymers in existed.

171.    As explained by a scientist at the U.S. Environmental Protection Agency, Gore's unilateral changes to the traditional definition of PFC are only "a weak attempt to define themselves as better or not so bad while at the same time preserving the market share" and "profit[] from their slightly adjusted products for a very long time." *See* section IV.F., *supra.* Gore's Common Omissions and Misrepresentations regarding PFCs of Environmental Concern are especially deceptive because Gore knew that it was using PFAS for most of the class period and

---

[51] *What are PFCs and How Do They Relate to Per- and Polyfluoroalkyl Substances (PFASs)?*, EPA, https://19january2017snapshot.epa.gov/pfas/what-are-pfcs-and-how-do-they-relate-and-polyfluoroalkyl-substances-pfass_.html (last accessed Aug. 8, 2025).

that Gore also knew that Gore's use of PFAS in the manufacturing process was material to consumers.

**5.    Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC\* interchangeably.**

172.    Finally, Gore makes it very difficult for reasonable consumers to determine which products continue to use the old PFAS-based ePTFE Gore-Tex Membrane and PFAS-based DWR Treatment compared with the new ePE membrane and non-PFAS-DWR treatment on Gore's direct-to-consumer sales website, gorewear.com.

173.    In Defendant's product listings on gorewear.com, Defendant states they feature "new thinner, lighter, and PFC-Free" Gore-Tex Fabric.[52] But Defendant also uses the term "PFAS-free" to refer to the same jacket:

The SPINSHIFT Jacket is specially designed to deliver protective comfort on daily road or gravel rides, featuring a low profile, streamlined fit and innovative body mapping for a second skin-like cycling fit, along with the GUARANTEED TO KEEP YOU DRY promise of the new thinner, lighter* and PFC-Free** GORE-TEX fabric.

Loaded with innovation to tackle daily rides in any condition, the SPINSHIFT cycling jacket features the next-generation GORE-TEX fabric, that is thinner, lighter* and PFC-free**, while providing the durable, waterproof, and windproof protection you expect from the GORE-TEX brand. The Kinetic Garment Design ensures a comfortable ergonomic fit for your drop bar position where it moves effortlessly with your body while maintaining a sleek, streamlined profile, whether you're tucked in over the handlebars or in a more relaxed position. * Through laminates with a new lower-mass membrane and select textile(s) (per Higg MSI) ** Advances Gore Fabrics´ goal of being free of PFCs of environmental concern over the lifecycle of its consumer products. In this case, the goal is accomplished using non-fluorinated materials.

---

[52] *Concurve Gore-Tex Jacket Womens*, Gorewear, https://www.gorewear.com/us/en-us/concurve-gore-tex-jacket-womens-101067 (last accessed Jan. 28, 2025).

\*        \*        \*

174.    In Defendant's product listings for other products, Defendant simply states it has a Gore-Tex Membrane, with no explanation as to whether they may have a PFAS ePTFE Gore-Tex Membrane and/or PFAS-based DWR Treatment:[53]

The SPINSHIFT Jacket is specially designed to deliver protective comfort on daily road or gravel rides, featuring a low profile, streamlined fit and innovative body mapping for a second skin-like cycling fit, along with the GUARANTEED TO KEEP YOU DRY promise of the new thinner, lighter\* and PFAS-Free\*\* GORE-TEX fabric.

Loaded with innovation to tackle daily rides in any condition, the SPINSHIFT cycling jacket features the next-generation GORE-TEX fabric, that is thinner, lighter\* and PFAS-free\*\*, while providing the durable, waterproof, and windproof protection you expect from the GORE-TEX brand. The Kinetic Garment Design ensures a comfortable ergonomic fit for your drop bar position where it moves effortlessly with your body while maintaining a sleek, streamlined profile, whether you're tucked in over the handlebars or in a more relaxed position. \* Through laminates with a new lower-mass membrane and select textile(s) (per Higg MSI) \*\* Advances Gore Fabrics´ goal of being free of PFASs of environmental concern over the lifecycle of its consumer products. In this case, the goal is accomplished using non-fluorinated materials.

---

[53] *Stream Jacket Womens*, Gorewear, https://www.gorewear.com/us/en-us/stream-jacket-womens-100823?variant=8845 (last accessed Jan. 18, 2025).



**NEXT-GENERATION GORE-TEX JACKET**

The CONCURVE running jacket features the new GORE-TEX membrane which is thinner, lighter, with a lower carbon footprint*, while delivering the same GUARANTEED TO KEEP YOU DRY promise.

175.    Because of Gore's misleading and deceptive conduct, consumers are led to believe that products with Gore-Tex Fabric have certain superior quality and characteristics they do not actually have. It also misrepresents the environmental impact of Gore's manufacturing practices.

176.    Defendant's forward-facing messaging to consumers through, for example, the Product's labeling and website statements, also creates an overall impression that there are no PFAS used and/or present in the Products and promises the Products are high quality, safe, and non-toxic.

177.    No reasonable consumer would expect, suspect, or understand that the Products have or have a material risk of containing PFAS and/or were manufactured using PFAS, given the current Federal and state laws about PFAS.

178.    Based on the both the Common Omissions and Misrepresentations, along with the overall impression presented by Gore, reasonable consumers, including Plaintiffs, did not know

nor did they expect that Products with Gore-Tex Fabric were treated with and/or manufactured using PFAS.

**H.   Gore knows that its environmental stewardship is material to consumers.**

179.   A large portion of consumers increasingly care about the environmental impact of products when making purchasing decisions, with many stating they are willing to pay more for sustainable options and prioritize brands with environmentally conscious practices. According to the McKinsey study, a staggering 78% of U.S. consumers say that a sustainable lifestyle is important to them, and that over 60% of U.S. consumers revealed that they care about buying environmentally and ethically sustainable products.[54] According to the study's authors, "the research shows that a wide range of consumers across incomes, life stages, ages, races, and geographies are buying products bearing ESG-related labels."

180.   As consumers learn of the consequences of climate change and environmental degradation, they begin to actively search for and buy more environmentally friendly products.[55]

181.   It is also well documented that consumers will pay a premium for products from supply chains that are less environmentally damaging. PricewaterhouseCoopers recently published a survey that found that consumers would spend 9.7% more, on average, for sustainably produced or sourced goods, despite inflation and cost-of-living concerns.[56] According to Forbes magazine,

---

[54] *Consumers care about sustainability—and back it up with their wallets*, McKinsey & Company, https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets#/ (last accessed June 16, 2025).

[55] Antonia Kerle, *An Eco-wakening: Measuring global awareness, engagement and action for nature*, Economist Impact (Sept. 29, 2021), https://impact.economist.com/sustainability/ecosystems-resources/an-eco-wakening-measuring-global-awareness-engagement-and-action-for-nature.

[56] *Consumers willing to pay 9.7% sustainability premium, even as cost-of-living and inflationary concerns weigh: PwC 2024 Voice of the Consumer Survey*, PricewaterhouseCoopers

its annual revenue in 2024 was about $3 billion. Studies also show that the market for waterproof-breathable outerwear was about $460 million in 2024, of which Gore-Tex enjoys a 70% market share.

182.    Given these trends, companies are increasingly setting aside time, attention, and resources to position their products and supply chains as environmentally responsible via their advertisements and corporate literature. For example, the McKinsey study reviewed actual consumer buying behavior over a five-year period to compare products that made one or more ESG-related claims on their packaging to similar products which made none. The McKinsey study found that the packages with the ESG-related claims outperformed products that made none, and that there was "a clear and material link between ESG-related claims and consumer spending."

183.    And Gore is no exception. For more than a decade, Defendant has understood that consumers are concerned about the environmental impact of its products. For example, as early as 2013, Gore Fabrics started a consumer survey on material attributes for consumers when choosing outerwear and found that "environmental factors – the use of environmentally friendly materials and reduced impact production process – are gaining importance" with consumers.[57]

184.    Gore also repeats in many of its corporate documents its understanding that consumers find Gore's environmental practices material when considering which outdoor products to buy. For example, Gore states in its 2022 Sustainability Update report that "sustainability is increasingly at the heart of [] innovation as we strive to satisfy our customers' need for more

---

(May 15, 2024), https://www.pwc.com/gx/en/news-room/press-releases/2024/pwc-2024-voice-of-consumer-survey.html.

[57] Gore Fabrics Responsibility Update, Gore (2015), available at https://www.gore-tex.com/sites/default/files/assets/gore_fabrics_responsibility_update_2015.pdf (last accessed June 16, 2025).

- 67 -

sustainable products[.]"[58] And more recently, in December 2024, Gore's Business Leader, Achim Loeffler, highlighted that consumers are aware of PFAS and that the use of PFAS is material to their purchase decisions: "many years ago, our customers approached us. We want to have a PFAS-free product, and it should, by the way, performance as well as any PTFE. […] It's high-performance and sustainable because our customers are asking for this."[59]

## I. Gore's promotion of its purported commitment to environmental stewardship in its corporate literature evidences the materiality of the Common Omissions and Misrepresentations.

185.    Gore saturates consumers with its "green" values message via its websites, use of labels, photo and video displays, corporate reports, public announcements, and social media messaging. Gore's advertising campaign also positions Gore as highly committed to environmental stewardship and as an environmental leader within the outdoor apparel industry via its advertisements and corporate literature. Gore's campaign also conveys a common message that its manufacturing processes and business decisions follow these "green" values because it knows that environmental responsibility is important to consumers.

186.    For example, as early as 2012, Gore published an Environmental Statement[60] specifically outlining the steps the company was taking in "minimizing our environmental

---

[58] Sustainability Update, Gore (2022), available at https://www.gore.com/system/files/2023-09/2022_Enterprise_Sustainability_Update_2023-09-07.pdf (last accessed June 16, 2025).

[59] *in B2B and B2C*, LuxePlace (Dec. 24, 2024), https://luxeplace.com/exclusive-interview-with-gore-tex-global-business-leader-how-to-build-strong-brand-identity-in-b2b-and-b2c/ (last accessed June 16, 2025).

[60] *Environmental Statement*, Gore, https://web.archive.org/web/20120214232646/http://www.gore-tex.com/remote/Satellite/content/sponsorships/environmental-statement (capture from Feb. 14, 2012).

footprint." The company also explained that environmental stewardship was central to Gore's founders and that the company was devoted to "carrying out that tradition":



187.    Gore's marketing also redefines the theme of outdoor apparel "performance" to expressly include a commitment to sustainability and green values:



- 69 -

 *"Being fair and responsible to the environment while offering durable products which provide the best in class level of protection lies at the very heart of our culture. This is our founders, Bill and Vieve Gore's, legacy, and we are proud to continue this tradition."*

 ROSS MACLAINE
Gore Fabrics Division Sustainability Leader

# PERFORMANCE REDEFINED

We at the Gore Fabrics Division, the maker of GORE-TEX products, know about performance. For over 40 years, we have been designing durable products that are tested to the extreme and perform in the harshest conditions, enabling people to perform at their best. But durable product performance is no longer enough. As we face severe and growing challenges to our climate, environment and society, we are taking responsibility for our actions and contributions.
Our performance depends on a healthy climate, a clean and thriving environment, fair labor conditions and safe working conditions. We are measuring our performance by our ability to protect people and the planet while prolonging the longevity of our products and promoting the wellbeing of individuals.

That's what we call Performance Redefined.





*We are trusted for high performance products that "do what we say they will do." Maintaining this trust will depend on our continued ability to credibly demonstrate our long-term commitment to caring for people and planet.*





JACQUES RENÉ
Fabrics Division Leader

## As the GORE-TEX Brand, we take sustainability as seriously as we take performance.

188.     Gore also identifies environmental stewardship as a "top priority for our business." Even Gore's CEO explains that Gore's "commitment to sustainability is an expression of our Gore brand promise[.]":



*Our commitment to sustainability is an expression of our Gore brand promise, "Together, improving life". Our expectation is that the value of our innovations is greater than the environmental and social impact of our products and operations.*





JASON FIELD
President and CEO at W. L. Gore & Associates

**1.     Gore's "Sustainability Commitment" website promotes environmental stewardship and prominently features "green" images because Gore understood these claims to be material to a reasonable consumer.**

189.     Gore creates and maintains websites promoting its environmental claims, as it knows this information is material to consumers.

190.    For example, Gore's Sustainability Commitment website represented Gore to consumers as a business committed to sustainability and to reducing the environmental impact of its business practices and products.[61] Below is an example of Gore's "aggressive" approach to environmental stewardship:





---

[61] *Responsible Usage of Fluorochemicals*, Gore-Tex, https://www.gore-tex.com/en_au/technology/responsibility/pfc-goal (last accessed June 16, 2025).

191.    Under the FAQ section of the Sustainability Commitment website, Gore lists the question "What is the key environmental impact of Gore-Tex garments?" and then states: "Gore-Tex and other Gore fabrics are an environmentally sound choice because they are manufactured responsibly" and that Gore "employ[s] a Life Cycle Assessment approach that considers all aspects of our products [that] starts with the production of raw materials by our suppliers and includes all elements of manufacturing and transportation":

**WHAT IS THE KEY ENVIRONMENTAL IMPACT OF GORE-TEX GARMENTS?**

GORE-TEX and other GORE® fabrics are an environmentally sound choice because they are manufactured responsibly and their durable performance allows apparel to last longer, reducing the use of natural resources and waste.

While some manufacturers of functional materials focus on only part of the story regarding the environmental profile of their products, we employ a Life Cycle Assessment approach that considers all aspects of our products. This starts with the production of raw materials by our suppliers and includes all elements of manufacturing and transportation. We even consider the impact of the washing and drying performed by the consumer over the lifetime of the garment.

Comparing the relative impact of each phase of a GORE-TEX jacket's life, the largest environmental impact occurs during production and finishing of the component materials that make up a garment. In contrast, washing, drying, and retreating during the useful life and disposal incurs a smaller environmental impact.

192.    Also under the FAQs, Defendant states that apparel or accessories made with Gore fabrics "can be safely disposed of just like any other apparel product" without also explaining that there is much debate as to whether PTFE can be safely incinerated or disposed of in an environmentally safe way.[62]

---

[62] *See, e.g., Per- an Polyfluoroalkyl Substances Chemical Action Plan*, Washington State Department of Health, Section 4.5.3 Ultimate disposal, available at https://apps.ecology.wa.gov/publications/documents/2104048.pdf (last accessed June 16, 2025).

- 73 -

**HOW SHOULD I DISPOSE OF A GORE-TEX PRODUCT IN AN ENVIRONMENTALLY SAFE WAY?**

Garments or footwear made from GORE® fabrics can be safely disposed of just like any other apparel product.

Contrary to most other plastics, polytetrafluoroethylene (PTFE) - the raw material of our membrane - is not made or processed using plasticizers or stabilizers. It doesn't contain residuals like heavy metals, organotin compounds or phthalates. If disposed of in a landfill, PTFE will not degrade, so it will not contribute to the formation of greenhouse gases (i.e., methane) or release substances into the water or air. In an incineration plant, PTFE is safely converted to carbon dioxide and fluorspar. Potentially harmful gases are captured by pollution control devices (alkaline scrubbers) that have been in place for a number of decades.

Finding ways to extend the useful life of a product has always been the environmentally preferred option over product disposal. One might wish to consider donating footwear or garments to charities or repurposing the product for other applications.

193.    Finally, Defendant makes various assertions related to the sustainability of its products, strategy, and manufacturing:[63]



As innovators in performance apparel for more than 60 years, we are committed to striving for more sustainable solutions across the industry. Through long-lasting products, science-led innovation, and our commitment to caring beyond with responsible business practices, our goal is to protect people in the outdoors and improve the environmental impact of our operations and products.

---

[63] *Acting Responsibly Through Science-Based Innovation*, Gore, https://www.gore-tex.com/sustainability (last accessed Jan. 28, 2025); Jon Doran, *ePE: GORE-TEX's quiet fabric revolution*, Trek & Mountain (Mar. 25, 2024), https://trekandmountain.com/2024/03/25/epe-gore-texs-quiet-fabric-revolution/ (last accessed Jan. 28, 2025).

**2.     Gore keeps a YouTube channel with similar misleading claims about its environmental stewardship because Gore knows this information is material to a reasonable consumer.**

194.    In a video on its YouTube channel, Defendant claims to hold its commitment to sustainability to the same "high level" as its commitment to performance, or "responsible performance."[64] Similarly, on its website, Defendant states, "As the Gore-Tex Brand, we take sustainability as seriously as take performance:"[65]



**3.     Senior Gore employees consistently reinforce Defendant's message that its commitment to environmental stewardship is synonymous to its commitment to performance because Gore knows this information is material to a reasonable consumer.**

195.    In a global marketing campaign, Defendant emphasized its focus on sustainability through a new line of high-performance apparel.[66] Defendant's Fabrics Division sustainability team leader, Silke Kemmerling, stated: "We believe performance and sustainability are not

---

[64] *Responsible Performance - how does the Gore-Tex brand unite sustainability & performance?*, Gore-Tex Brand, https://www.youtube.com/watch?v=plOKGlyGads (last accessed June 16, 2025).

[65] *Acting Responsibly Through Science-Based Innovation*, Gore-Tex, https://www.gore-tex.com/sustainability (last accessed June 16, 2025).

[66] *"Our Work is Never Done" Salutes Gore-Tex's Storied Past and Sustainable Future*, The Drum (Sept. 15, 2022), https://www.thedrum.com/news/2022/09/15/our-work-never-done-salutes-gore-tex-s-storied-past-and-sustainable-future (last accessed June 16, 2025).

mutually exclusive, and protecting people also means protecting the planet …. Responsible Performance defines our sustainability commitment beyond technical product performance benefits to include a wider combination of protection, comfort and sustainability. We are … striving to create products that positively impact both people and the planet, and deliver the high-performance benefits customers and consumers trust and rely on from us:"[67]

**As the GORE-TEX Brand, we take sustainability as seriously as we take performance.**

196.   Repeating its commitment to "Responsible Performance," Defendant's Consumer Fabrics Business Leader, Achim Löffler, stated: "The Gore-Tex brand is committed to being a responsible brand and continuing our journey to discover innovative products that offer customers and consumers high performance and are also sustainable." Defendant's Fabrics Sustainable Leader, Ross MacLaine, echoed that commitment: "We continue to push the boundaries of what is possible in sustainability and performance in our products; lowering our footprint whilst continuing to meet demanding end user performance needs for protection and comfort."[68]

197.   The statements described in this section show Gore's claims of environmental stewardship were material to consumers as part of their purchase decision. So Gore had to disclose the Common Omissions because its Hang Tags create the misleading and false impression that Gore is trying to reduce the environmental harm caused by making Gore-Tex Fabric. Gore had superior knowledge it was continuing to use PFAS in its manufacturing process as a surfactant and that this manufacturing process was containing adjacent areas with high levels of PFAS. As shown

---

[67] *Id.*

[68] *Gore's Journey of Responsible Performance*, Suston, https://sustonmagazine.com/2022/03/31/gores-journey-of-responsible-performance/ (last accessed June 16, 2025).

by the Green Guides guidance, no reasonable consumer would readily understand that Gore-Tex fabric can leach PFAS via ordinary use or Gore's one-sided definition of the term "PFC" excluded PTFE, a type of PFAS.

**J.      Gore's practices violate the FTC Green Guides and state consumer protection statutes.**

198.    In response to the desire by increasing numbers of consumers to buy environmentally friendly products and of companies to tout the environmental benefits of their products, the FTC released its Green Guides.

199.    The Green Guides "apply to environmental claims in labeling, advertising, promotional materials, and all other forms of marketing in any medium, whether asserted directly or by implication, through words, symbols, logos, depictions, product brand names, or any other means,"[69] and sets forth guidance to marketers to "avoid making environmental claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45."[70]

200.    "Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce. A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions."[71] "Whether a particular claim is deceptive will depend on the net impression of the advertisement, label, or other promotional material at issue."[72]

201.    "To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all

---

[69] 16 C.F.R. § 260.1(c).

[70] Green Guides § 260.1.

[71] 16 C.F.R. § 260.2.

[72] 16 C.F.R. § 260.1(d) (emphasis added).

reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."[73] "[A] reasonable basis often requires competent and reliable scientific evidence [such as] tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results."[74]

202.    The Green Guides also play a large role in state consumer protection law. At least twelve states[75] have laws that directly incorporate the standards in the Green Guides as the legal standard for lawfully certain marketing claims.[76] Additionally, twenty-seven states and territories[77] have laws stating that the FTC's interpretation in the Green Guides shall serve as persuasive authority for courts construing a particular state consumer protection law. The Green Guides have also been used as evidence in court proceedings involving false advertising litigation.

203.    The Green Guides address environmental claims by explaining (1) general principles that apply to all environmental marketing claims; (2) how consumers are likely to interpret particular claims and how marketers can support these claims; and (3) how marketers can

---

[73] 16 C.F.R. § 260.2.

[74] 16 C.F.R. § 260.2.

[75] These states are Alabama, California, Florida, Indiana, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, Pennsylvania, Rhode Island, and Washington.

[76] April 24, 2023 Comments to FTC re Green Guides from the states of California, Connecticut, Delaware, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Wisconsin, available at https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf.

[77] These are Alabama, Alaska, Arizona, Connecticut, District of Columbia, District of Guam, Florida, Idaho, Georgia, Illinois, Maine, Maryland, Massachusetts, Michigan, Montana, New Hampshire, New Mexico, Ohio, South Carolina, Rhode Island, Texas Tennessee, Utah, Vermont, Washington, and West Virginia.

qualify their claims to avoid deceiving consumers. The FTC Green Guides also expressly describe

a marketer's responsibilities when making environmental claims. Some of these include:

> **§ 260.2 Interpretation and substantiation of environmental marketing claims.** A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis *before* they make the claims. In the context of environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence [created] in an objective manner by qualified persons. (emphasis added) (citation omitted)

> **§ 260.3 (a) Qualifications & disclosures.** To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable.

> \*       \*       \*

> **§ 260.3 (c) Overstatement of environmental attribute.** An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the benefits are negligible. *Example 1:* An area rug is labeled "50% more recycled content than before" [but] the manufacturer increased the recycled content of its rug from 2% recycled fiber to 3%. Although the claim is technically true, it likely conveys the false impression that the manufacturer has increased significantly the use of recycled fiber.

> **§ 260.4 General environmental benefit claims.** (a) It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. (b) Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits that may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, markets should not make unqualified general environmental benefit claims.

> \*       \*       \*

- 79 -

*Example 3:* A marketer's advertisement features a laser printer in a bird's nest balancing on a tree branch, surrounded by dense forest. In green type, the marketer states, "Buy our printer. Make a change." Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that a marketer can substantiate these claims, this advertisement is deceptive.

*    *    *

**§ 260.6 Certifications and seals of approval**: (a) It is deceptive to misrepresent, directly or by implication, that a product, package has been endorsed or certified by an independent third party. (b) A marketers use of the name, logo, or seal of approval of a third party certifier or organization may be an endorsement, which should meet the criteria of the FTC's Endorsement Guides . . . (c) Third-party certification does not eliminate a marketers' obligation to ensure that it has substantiation for all claims reasonably communicated by the certification. (d) A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit . . . . Because it is highly unlikely that marketers can substantiate general environmental benefit claims, marketers should not use environmental certifications or seals that do not convey the basis for the certification. (e) . . . To avoid deception, marketers should use clear and prominent qualifying language that clearly conveys that the certification or seal refers only specific and limited benefits.

**§ 260.10 Non-Toxic Claims.**

(a) It is deceptive to misrepresent, directly or by implication, that a product, package, or service is non-toxic. Non-toxic claims should be clearly and prominently qualified to the extent necessary to avoid deception.

(b) A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally. Therefore, marketers making non-toxic claims should have competent and reliable scientific evidence that the product, package, or service is non-toxic for humans and for the environment or should clearly and prominently qualify claims to avoid deception.

Example 1: A marketer advertises a cleaning product as "essentially non-toxic" and "practically non-toxic." **The advertisement likely**

- 80 -

**conveys that the product does not pose any risk to humans or the environment,** including household pets. If the cleaning product poses no risk to humans but is toxic to the environment, the claims would be deceptive.

204. The Green Guides also provide guidance regarding the use of terms such as "sustainability" as this term likely implies certain environmental benefits. Although the Green Guides do not define sustainability per se, "this does not mean unscrupulous marketers are free to deceive consumers."[78] Indeed, according to the FTC, "marketers still are responsible for substantiating consumers' reasonable understanding of these claims." For example, "if in context reasonable consumers perceive a sustainable claim as a general environmental benefit claim, the marketer must be able to substantiate that claim and all attendant reasonably implied claims" and that, typically, a generic sustainability claim "presents substantiation challenges." For that reason, the FTC has admonished companies not to use unqualified claims such as "sustainable" due to its determination that "it is highly unlikely that they can substantiate reasonable interpretations of these claims."[79]

205. Gore's Common Omissions and Misrepresentations violate several parts of the FTC Green Guides. For example, Gore's Black Hang Tag states it is "committed to sustainability." But according to Section 260.4 of the Green Guides, broad terms like sustainability can convey a range of reasonable meanings to a reasonable consumer. Gore has a duty under the guides for substantiating all reasonable meanings with competent and reliable scientific evidence. If Gore cannot do so, then Gore violates Section 260.2, "Interpretation and Substantiation of

---

[78] FTC, *The Green Guides Statement of Basis and Purpose*, at 258, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (last accessed June 16, 2025).

[79] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures* (Apr. 2, 2019), available at https://www.ftc.gov/news-events/news/press-releases/2019/04/ftc-sends-warning-letters-companies-regarding-diamond-ad-disclosures (last accessed June 16, 2025).

Environmental marketing claims," of the FTC Green Guides, which requires markets to provide scientific evidence to justify its claims.

206.    Also, Gore's statement on its Hang Tag that Gore-Tex Fabric is "safe to wear" and "environmentally sound" conveys that Gore-Tex Fabric has no lasting negative environmental impact. But because Gore likely cannot substantiate these claims using scientific evidence, Gore's actions are substantially similar to Example 3 of Section 260.4, "General Environmental Benefit Claims," of the FTC Green Guides. And because Gore's does not disclose the environmental harm associated with manufacturing PTFE, Gore's actions are substantially similar to Example 1, so Gore also violates Section 260.3(c), "Overstatement of environmental attribute," of the FTC Green Guides. Similarly, Gore's statement that its products are non-toxic to the environment is similar to Example 1 and violates Section 260.10, "Non-Toxic Claims."

207.    Next, the statement "PFC* Free Laminate" on Gore's Brown Hang Tag violates the Green Guides in two ways. First, the Green Guides state in Section 260.9 that "Free-of" claims must not be "deceptive to misrepresent, directly or by implication that a product or package or service is free of, or does not contain or use, a substance." Here, Gore represents that its products do not have PFCs in a prominent place on the label. But in the fine print of the label, Gore qualifies the commonly understood term of PFCs to its unilateral definition of "PFCs of Environmental Concern," but does not define what that term means on the Hang Tag. Instead, consumers would be forced to comb through pages and pages of Gore's website to finally learn that ePTFE is not included in Gore's definition of PFC—even though it is typically included as a PFC in academic journals, government publications, and consumer-facing websites. Second, Gore states it does not use fluorinated materials even though Gore-Tex Fabric is made with PTFE (one of the most

- 82 -

fluorinated polymers in existence) and treated with a DWR-treated coating that has PFAS. These practices violate Section 260.9, "Free-Of Claims," of the Green Guides.

208. Because the net impression of Defendant's environmental marketing claims and the Common Omissions and Misrepresentations are likely to mislead reasonable consumers, they are deceptive and violate state consumer protection laws.[80]

**K.   Gore has actively concealed the truth about the Common Omissions and Misrepresentations from consumers.**

209. Gore actively and knowingly concealed from and failed to disclose to Plaintiffs and Class members that the Gore-Tex Fabric is not environmentally sustainable as described in this Complaint.

210. Gore actively and knowingly concealed and failed to disclose material facts to Plaintiffs and Class members about the true impact of the Gore-Tex Fabric's manufacturing process on the environment, including that:

- Gore currently uses PFAS and some of the most fluorinated polymers in existence to manufacture its PFC* Free products;

- Gore's manufacturing processes contaminated adjacent areas with significantly high levels of PFAS;

- Gore-Tex Fabric sheds PFAS via ordinary use;

- Gore's PFC* Free Laminate label misconstrues the common definition of PFC by unilaterally excluding ePTFE and PTFE; and

---

[80] *See, e.g.*, Cal. Bus. & Prof. Code § 17580.5(a) ("It is unlawful for a person to make an untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied. For the purpose of this section, 'environmental marketing claim' shall include any claim contained in the 'Guides for the Use of Environmental marketing claims' published by the Federal Trade Commission.").

- Gore uses PFC, PFC*, and PFAS interchangeably.

211. The knowing and active concealment of these material facts make the Gore-Tex Fabric products' packaging deceptive, misleading, and unfair because without full disclosure, reasonable consumers, including Plaintiffs, believe products including Gore-Tex Fabric to be environmentally sustainable and to have environmental benefits when these products do not have these attributes.

212. Plaintiffs and Class members paid a premium price based on Gore's active concealment of the Common Omissions and Misrepresentations regarding the environmental and sustainability marketing claims.

213. The facts concealed, omitted, or not revealed by Gore were material facts in that reasonable consumers, including Plaintiffs, would have considered them when deciding whether to buy products with Gore-Tex Fabric. Had Plaintiffs known the truth, they would not have bought the product with Gore-Tex Fabric or paid the premium price.

**L.     Gore can easily remediate its current practices so they become not misleading to consumers.**

   **1.     Gore-Tex can be made without any detectable levels of PFAS.**

214. There are many PFAS-free alternatives for both Gore-Tex's Membrane and DWR Treatment. For example, in or around 2021, Gore announced that it had created a new compound for its Gore-Tex Membrane that is PFAS-free.[81] Gore also created a PFAS-free DWR Treatment.[82]

215. Manufacturer-retailer Columbia uses a fabric titled OutDry™ with a PFAS-free membrane and treatment, Nikwax produces water-based, PFAS-free DWR treatments; The North

---

[81] *Next Generation Gore-Tex Products with ePE Membrane*, Gore, https://www.gore-tex.com/technology/new-products (last accessed June 16, 2025).

[82] *Durable Water Repellant (DWR)*, Gore, https://www.gore-tex.com/support/care/dwr (last accessed June 16, 2025).

- 84 -

Face's Futurelight Line features a PFC-free DWR treatment and a single-polymer fiber instead of PTFE; Marmot's PreCip Eco jacket is PFC-free and a product from its PFAS-free collection; Helly Hansen's products with Lifa Infinity Pro technology, including its Odin 9 Worlds Infinity 3L jacket and Verglas Infinity Shell pants, which are both PFC-free with no added chemicals for water repellency; The North Face's Freedom snow pants with a PFC-free DWR coating for water resistance; and Salomon running and hiking footwear are PFC or PFC EC-free.[83]

---

[83] *Safest, Non-Toxic Jackets & Raincoats Without PFAS "Forever Chemicals"*, Mamavation (Nov. 8, 2021), https://www.mamavation.com/product-investigations/safest-nontoxic-jackets-raincoats-pfas-forever-chemicals.html (last accessed June 16, 2025); *Gear Chat | The North Face Futurelight & Gore-Tex*, Fall Line Skiing, https://www.fall-line.co.uk/the-north-face-futurelight-and-gore-tex/ (last accessed June 16, 2025); *Marmot PreCip Eco Rain Jacket Review*, Switch Back Travel, https://www.switchbacktravel.com/reviews/marmot-precip-eco (last accessed June 16, 2025); *Life Infinity Pro & Life Infinity*, Helly Hanson, https://www.hellyhansen.com/lifa-infinity-pro (last accessed June 16, 2025); *Life Infinity Pro*, Helly Hanson, https://www.hellyhansen.com/en_us/shop/technologies/lifa-infinity-pro (last accessed June 16, 2025); *The North Face Freedom Pants – Men's*, REI, https://www.rei.com/product/235656/the-north-face-freedom-pants-mens (last accessed June 16, 2025); *Salomon's Footwear Range now PFC- and PFC EC-free*, Salomon, https://www.salomon.com/en-us/blog/pfc-ec-free-footwear (last accessed June 16, 2025).

**2.    There are many ways Gore can change its advertising to avoid misleading consumers.**

**a.    Gore can follow expert guidance on how to more accurately label its Gore-Tex products so they are not misleading to consumers.**

216.    Consumer and environmental groups have long maintained that certain PFAS labeling that are similar to Gore's can be confusing and misleading to consumers. One part that these groups find most misleading is a retailer's or manufacturer's omission as to using PTFE. Below is one example from the Natural Resources Defense Council, a non-governmental organization consisting of three million members and the expertise of over 700 scientists, lawyers, and other environmental specialists.[84] This graphic shows that omitting PTFE from the definition of PFC Free or PFAS Free misleads reasonable consumers:

| Labels to Watch For | What It Really Means | Recommended Action |
|---|---|---|
| Water-resistant, waterproof, stain-resistant, dirt-repellent, and/or DWR | Products with these labels may indicate presence of PFAS. | Ask the manufacturer if product contains any PFAS (including PTFE). If it does, avoid buying. |
| PFOS and/or PFOA Free | This product may contain PFAS. PFOS and PFOA refer to only two of thousands of PFAS chemicals that could be in the product. | Ask the manufacturer if product contains any PFAS (including PTFE). If it does, avoid buying. |
| PFC Free and/or PFCec Free | This product may contain PFAS. PFC and PFCec could refer to only a subset of PFAS chemicals and not the many thousands that have been developed since the term PFC came into use. | Ask the manufacturer if product contains any PFAS (including PTFE). If it does, avoid buying. |
| PFAS Free | This product could be PFAS free. Manufacturers, however, don't always include a specific type of PFAS called PTFE in their definition of PFAS, so the product may not actually be PFAS free. | Ask the manufacturer if product contains any PTFE. If it does, avoid buying. |

*age i*  |  TOXIC FASHION: REMOVE "FOREVER" PFAS CHEMICALS FROM OUR APPAREL                                        NRDC

217.    Similarly, non-governmental organizations and academic researchers also criticize the practice of certain companies of equating PFOA and PFOS with the "worst" types of PFAS,

---

[84] *Toxic Fashion: Remove "Forever" PFAS Chemicals from Our Apparel*, NRDC, https://www.nrdc.org/sites/default/files/toxic-fashion-pfas-apparel-fs.pdf (last accessed June 16, 2025).

while also implying that other PFAS compounds are more benign to human health and the environment. In truth, once companies were forced to phase out PFOA and PFOS in 2015, they simply developed new chemicals as substitutes. But, like PFOA and PFOS, these newer chemicals are still persistent, bio-accumulative, and toxic. While many scientific organizations have documented the risks that PFAS—as a group—pose to human health and the environment, there are inadequate data to identify how toxic some PFAS are relative to others. So tries to differentiate between different types of PFAS are misleading to consumers:[85]

**Misleading claims:**

When it comes to PFAS, product claims can be misleading.

There are thousands of different types of PFAS. The first two chemicals to be introduced were PFOA (perfluorooctanoic acid) and PFOS (perfluorooctanesulfonic acid.). Voluminous research demonstrates that these chemicals are persistent, bio-accumulative and toxic. As a result, the Environmental Protection Agency worked with industry to phase out American manufacture of these chemicals in 2015.

Industry developed new chemicals to replace PFOA and PFOS. These new chemicals are sometimes called "short-chain" chemicals while PFOA and PFOS are referred to as "long-chain" or legacy chemicals.

**Some industry claims:**

**Long-chain PFAS are unsafe, short-chain PFAS are safe.**
No PFAS have been shown to be safe.

**PFCec Free Durable Water Repellant (DWR) is safe.**
PFCec stands for PFCs of environmental concern, and PFCec Free refers to polymers or shorter chain PFAS that industry claims are safer, but no PFAS have been shown to be safe.

**This pan is PFOA-free and PFOS-free.**
Products that make this claim often have other PFAS.

**Fluoropolymers (large molecules with fluorine) are stable and safe.**
No, they're not. They are made using harmful PFAS chemicals and they can break down into other toxic PFAS.

**Industry claims: PFAS are like berries. They're all different.**
Scientists around the world are calling for restrictions on the entire class of PFAS, because:

- PFAS have common characteristics that make them extremely persistent.
- Those PFAS that have been studied have been found to be toxic at very low doses.
- While every one of the thousands of PFAS have not been fully analyzed, there is enough concern about those PFAS that have been characterized to warrant caution.

---

[85] Shopper's Guide to Avoiding PFAS, available at https://www.cleanwateraction.org/sites/default/files/MA%20PFAS%20Fact%20Sheet%20-%20Shopper%27s%20Guide%20to%20Avoiding%20PFAS.pdf (last accessed June 16, 2025).

b.    **Unlike Gore, many other companies clearly explain the use of PFAS in their products.**

218.    The materiality to consumers of PFAS is shown by the rise of companies promoting "PFAS-Free Apparel." An example is found on the website "Good Trade,"[86] an organization who publishes editorials and reviews on sustainability and sustainable products.

219.    The article focuses on the active clothing category. And manufacturers other than Gore-Tex have made clear representations about PFAS that contrast sharply with the misleading claims of Gore. In a list compiled by the Environmental Working Group, the clarity of these claims contrast sharply with the omissions and misrepresentations made by Gore:[87]

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| **Apparel** | Apparel, homeware, shoes and cosmetics | H&M | "We banned PFAS in our apparel, homeware and shoes in 2013, and in H&M Group branded cosmetics in 2018." <br><br> https://hmgroup.com/wp-content/uploads/2021/03/HM-Group-Sustainability-Performance-Report-2020.pdf |
| | All industrial processes | Benetton | "Benetton Group banned Per- and Polyfluorinated chemicals (PFCs) from all industrial processes involving any product or materials. Benetton Group asks all its suppliers to use only sustainable PFC-free chemicals." 98% compliance. <br><br> https://www.benettongroup.com/site/assets/files/1143/benetton_pfcs_elimination_progress_dec_2022.pdf |

---

[86] https://www.thegoodtrade.com/features/pfas-free-clothing/.

[87] https://www.ewg.org/withoutintentionallyaddedphaspfc.

- 88 -

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | All products | Burberry | Long- and short-chain PFCs are "**banned from use**" on the Restricted Substances List (RSL).<br><br>https://www.burberryplc.com/content/dam/burberryplc/corporate/documents/impact/impact-documents/product-restricted-substances-list-february-2019.pdf |
| | All products | Levi Strauss & Co. | "Levi Strauss & Co. has banned the use of PFCs in our products and extended that ban to include all related PFAS."<br><br>https://www.levi.com/US/en_US/blog/article/why-levis-stopped-using-pfcs-and-pfas |
| | All products | Theory, part of Fast Retailing Group | "We worked with our business partners to develop alternatives to PFCs, and had eliminated PFC use by the fall/winter season of 2017."<br><br>https://www.fastretailing.com/eng/sustainability/environment/chemical.html |
| | All products | UNIQLO, part of Fast Retailing Group | "We worked with our business partners to develop alternatives to PFCs, and had eliminated PFC use by the fall/winter season of 2017."<br><br>https://www.fastretailing.com/eng/sustainability/environment/chemical.html |
| | All products | BESTSELLER (Only, Vero Moda, Jack&Jones) | "Instead of using chemicals that contain PFAS, we work with suppliers to use Bionic Eco – a water repellent finishing that is a safer and fluorocarbon-free alternative."<br><br>https://bestseller.com/media/qtwkh1es/bestseller_annual-report-2022-23.pdf |

- 89 -

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | All clothing | Armadillo Merino | "We take pride in designing the world's most advanced next-to-skin chemical and PFAS free clothing." <br><br> https://armadillomerino.us/ |
| | All clothing | ARTILECT | "ARTILECT are very proud to be one of the first performance apparel brands to be completely PFA/PFC free in our fabrics, with no ePTFE, C6 DWR, or other "forever chemicals" to be found in our shells, insulations, or linings." <br><br> https://www.nordicoutdoor.co.uk/artilect-mens-formation-3l-jacket/#:~:text=ARTILECT%20are%20very%20proud%20to,shells%2C%20insulations%2C%20or%20linings |
| | TENCEL™ fibres | BESTSELLER (Only, Vero Moda, Jack&Jones) | "Instead of using chemicals that contain PFAS, we work with suppliers to use Bionic Eco – a water repellent finishing that is a safer and fluorocarbon-free alternative." <br><br> https://bestseller.com/media/qtwkh1es/bestseller_annual-report-2022-23.pdf |
| | All products and materials | NA-KD | "PFAS are prohibited from use on NA-KD products or materials." <br><br> https://www.na-kd.com/siteassets/campaigns/2020/november/nakd-truth/environment-supply-chain/na-kd-restrictedsubstances.pdf?ref=115D68CCDA1 |
| | Riding clothes | Stierna Equestrian Sportswear | "Stierna's waterproof riding clothes have been free from PFAS since its launch in 2015." <br><br> https://www.stierna.se/dokument/Stierna%20Sustainability%20Report%202022%20Light.pdf |

- 90 -

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| **Durable Water Repellent (DWR)** | Ultra Durable Canvas Waterproofer | Hawk Tools | "it's natural and does not contain PFC's and is PFAS free"<br><br>https://www.hawktoolsusa.com/2022/10/19/how-to-waterproof-a-bell-tent/ |
| | ZELAN™ R3, PHOBOTEX ® R-ACE | Archroma | "PFAS-free* technologies …<br><br>*Below limits of detection according to industry standard test methods."<br><br>https://www.archroma.com/news/fluorine-free-solutions |
| | All products | AKAS Textiles and Laminations | "AKASTEX would like to state that we do not use PFOS or PFOA in any of our manufacturing."<br><br>https://akastex.com/akas-manufactures-pfoa-pfas-free-textiles/ |
| | Altopel F3® products | Bolger & O'Hearn | "An advanced PFC-free water repellent finish."<br><br>https://bolgerohearn.com/f3-altopel/ |
| | zeroF products and ECOPERL | CHT | "Fluorine-free water-repellent treatment."<br><br>https://solutions.cht.com/cht/web.nsf/id/pa_zerof_en.html |
| | BIONIC-FINISH® ECO | Rudolf Group | "Comes as a family of unique non-halogenated, APEO-free, fluorine-free formulations."<br><br>https://rudolf.com/technologies/bionic-finish-eco |
| | Ecoguard-SYN (Conc) | Sarex | "Fluorine free speciality product."<br><br>https://www.sarex.com/textile/product/finishing-auxiliaries/oil-water-and-stain-repellents/ecoguard-syn-conc |

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | Curb Water Repellent products | Sciessent | "100% fluorine-free, rapidly biodegradable, and Bluesign approved"<br><br>https://www.sciessent.com/solutions/water-repellent/ |
| | Teflon EcoElite | Teflon | "Non-fluorinated stain repellent technology."<br><br>https://www.teflon.com/en/industries-and-solutions/solutions/consumer-applications/textile-finishes/how-ecoelite-works |
| | Unidyne XF | Daikin | "PFC free water repellency."<br><br>https://www.daikinchem.de/product/water-oil-repellents/unidyne-xf-pfc-free-water-repellency/ |
| | Downtek water repellent down & Downtek PFC-free water repellent down | DownTek | Water-repellent down: "**No PFOA and no PFOS**" but does use C6 formulas.<br><br>https://down-tek.com/<br><br>PFC-Free water-repellent down: "**DWR formula completely free from all PFCs.**"<br><br>https://down-tek.com/ |
| | Nanomyte SR-200EC | NEI | "PFC-free"<br><br>https://www.neicorporation.com/products/coatings/easy-to-clean-coating/#tab-id-2 |
| | Neoseed Series | NICCA | "NEOSEED series is a PFC-free durable water repellent."<br><br>https://nctexchem.com/product/process/finishing/recommend/neoseed/ |

- 92 -

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | All DWR products | Polartec, a Milliken & Company brand | "… announces the elimination of PFAS in its DWR treatments across its line of fabrics" (July 2021)<br><br>https://www.polartec.com/news/polartec-announces-full-use-of-non-pfas-dwr-treatments |
| | All Sympatex laminates | SympaTex | "Sympatex has always been PFAS and PTFE free."<br><br>https://www.sympatex.com/en/press/pfas-free-textile-solutions/ |
| | All products | OrganoClick | "It is PFAS-free and readily biodegradable."<br><br>https://organoclick.com/wp-content/uploads/2022/10/OrganoTex_DWR-brochure_web.pdf |
| | Wash-in textile waterproofing | Snickers Workwear | "Free from fluorocarbons (PFAS, PFOS, PFOA), cyclic siloxanes, and isocyanates."<br><br>https://www.snickersworkwear.com/products/accessories/other-accessories/213527 |
| | All products | Didriksons | "The water repellency treatment on all products are from 2015 free from fluorinated substances."<br><br>https://support.didriksons.com/hc/en-gb/articles/360037220172-Does-your-garment-have-any-per-fluorinates-fluorocarbons<br><br>"Phthalates or heavy metals are not knowingly implemented into our products, however, accidental or involuntary contamination could occur during transit or transfer."<br><br>https://support.didriksons.com/hc/en-gb/articles/360037587231-Do-your- |

- 93 -

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | | | garments-or-accessory-use-or-contain-phthalates-heavy-metals-and-other-dangerous-chemicals |
| | Select "PFC-Free" tagged products | Mammut | "Mammut abandoned C8 PFCs entirely in 2015 and began stepping back from C6 PFCs already in 2016. Building on the momentum, the full Mammut apparel collection reached 85% PFC-free in summer 2022 and is set to reach 94% in summer 2024. The clear goal is to hit 100% PFC-free by 2025." https://www.mammut.com/us/en/stories-guides/waterproofing |
| | Jackets, gilets, trousers, helmets, eyewear, gloves, bags, luggage, socks, hat warmers, re-proofers | Endura | "We do not use PTFE in any of our products." https://www.endurasport.com/ "In 2018 we launched our own biodegradable and PFC-free re-proofer." https://www.endurasport.com/ |
| | Coats, jackets, pants, accessories, t-shirts | ELVINE | "We use a water repellent impregnation without highly fluorinated chemicals (PFASs). PFASs are toxic to humans and environment." https://www.elvineclothing.com/sv/blogs/news/a-company-with-self-respect |
| | All products | Klättermusen | "As early as 2008, Klättermusen's products were PFOA-free and, by 2019, all products were PFAS-free." https://www.ri.se/en/centre-for-chemical-substitution/good-examples/klattermusen |
| | All products | Revolutionrace AB | "Sin[c]e 2019, we have banned hazardous PFAS chemicals in our |

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | | | products, opting for fluorocarbon-free alternatives." <br><br> https://corporate.revolutionrace.com/en/product-safety/ |

## M.    TOLLING OF THE STATUTES OF LIMITATIONS

### 1.    Discovery rule tolling

220.    Plaintiffs' claims are timely. They and other class members did not know of the omissions. Plaintiffs could not discover Gore's false environmental claims since the true extent of its ongoing use of PFAs contradicting these claims were concealed by the omissions and Gore's long-standing advertising and public relations campaign of protecting the environment.

221.    Plaintiffs and other Class members had no way of knowing Gore's deception and coverup about its real negative environmental impact by its continued use of PFAS in face of growing evidence that all PFAS (e.g., both long chained and short chained) result in both health and environmental risks. Even a visit to Gore's website today shows its attempt to falsely recast itself as a protector of the environment and leaving as little negative impact on the environment as possible (exactly what it knew its target market wanted).

222.    Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Gore was concealing the conduct complained of herein and was misrepresenting its true position regarding the sustainability and negative environmental impact it caused by continued use of PFAS in its products.

223.    Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Gore did not report information within its knowledge to federal and state authorities or consumers; nor would a reasonable and diligent

investigation have disclosed this information, which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs and other Class members have revealed that Gore valued profits over truthful marketing and compliance with law.

224.    All applicable statutes of limitation have been tolled by operation of the discovery rule about claims alleged herein.

### 2.    Fraudulent concealment tolling

225.    All applicable statutes of limitation have also been tolled by Gore's knowing and active fraudulent concealment, omissions and suppressions, and denial of the facts alleged throughout the period relevant to this action.

226.    Instead of directly informing the public about its ongoing use of PFAS that have both environmental and health risk, Gore chose to misconstrue, mislead, and hide its real sustainability issues all while touting itself as "serious" about protecting the environment.

### 3.    Estoppel

227.    By consistently touting its environmentally friendly products, Gore was under a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the PFAS used in its products, including the environmental impact and health risks.

228.    Gore knowingly, affirmatively, and actively concealed, omitted or suppressed, or recklessly disregarded the true character, quality, and nature of the PFAS used in its products, including the environmental impact and health risks. Hence, Gore is estopped from relying on any statutes of limitations.

## V.    CLASS ACTION ALLEGATIONS

229.    Plaintiffs bring this action on behalf of themselves and all those similarly situation as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on

- 96 -

behalf of these classes. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

**Maryland Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Maryland.

**California Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of California.

**Connecticut Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Connecticut.

**District of Columbia Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the District of Columbia

**Florida Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Florida.

**Illinois Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Illinois.

**Minnesota Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Minnesota.

**New York Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of New York.

**Washington Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Washington.

**West Virginia Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of West Virginia.

230.    The classes set forth below are classes for states for which there are no named plaintiffs at present but either incorporate the Green Guides into their consumer protection statutes or find Green Guide examples persuasive authority for deception.[88]

**Georgia Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Georgia.

**Idaho Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Idaho.

**Maine Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Maine.

**Massachusetts Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Massachusetts.

**New Hampshire Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of New Hampshire.

---

[88] *What's in a Label? The FTC's "Green Guides" in Context*, The State Energy & Environmental Impact Center, NYU School of Law (Feb. 23, 2023), https://stateimpactcenter.org/insights/whats-in-a-label-the-ftc-green-guides-issue-brief (last accessed June 16, 2023).

**New Mexico Subclass**

> All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of New Mexico.

**Pennsylvania Subclass**

> All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Pennsylvania.

**Vermont Subclass**

> All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Vermont.

231.    Excluded from the Class are Gore and its subsidiaries and affiliates; all people who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based on information learned through discovery.

232.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims classwide using the same evidence used to prove those elements in individual actions alleging the same claims.

233.    This action has been brought and may be maintained well on behalf of each of the Classes proposed under Federal Rule of Civil Procedure 23.

234.    Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so many and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that annual sales of waterproof breathable textiles in the United States range from $277 to $261 million between 2014 and 2024,[89] and that a

---

[89] *Forecasted market revenue of waterproof breathable textiles in the United States from 2014 to 2024*, Statista, https://www.statista.com/statistics/857055/waterproof-breathable-textiles-us-market-value-forecast/.

significant market share of these sales include products made with Gore-Tex Fabric, and estimate the number of class members to be more than one million. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, text messages, social media, Internet postings, and/or published notice.

235. Commonality and Predominance. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over questions affecting individual Class members, including, without limitation:

- Whether Gore engaged in the conduct alleged;

- Whether Gore designed, advertised, marketed, distributed, sold, or otherwise placed Gore-Tex Fabric into the stream of commerce in the United States;

- Whether Gore made specific claims to consumers of environmental stewardship regarding the manufacturing processes for Gore-Tex Fabric;

- Whether Gore knew of the environmental damage caused by using PFAS in the manufacturing process for its Gore-Tex Fabric;

- Whether Gore's conduct violates consumer protection statutes, the common law of fraudulent concealment, and other laws as asserted herein;

- Whether Gore knew or should have known of the PFAS shedding during ordinary use of Gore-Tex Fabric;

- Whether Plaintiffs and the other Class members overpaid for their Gore-Tex Fabric because of the fraud alleged;

- Whether Plaintiffs and the other Class members have the right to equitable relief; and

- Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

236. Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because all Class members were comparably injured through Gore's wrongful conduct as described above.

237. Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have hired counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

238. Declaratory and Injunctive Relief. Federal Rule of Civil Procedure 23(b)(2): Gore has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thus making appropriate final injunctive relief and declaratory relief with respect to the Class.

239. Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be found in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Gore, so it would be impracticable for Class members to individually seek redress for Gore's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory

judgments, and increases the delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS FOR RELIEF

### A.    Claim brought on behalf of the Maryland Class

COUNT I
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
**(MD. CODE, COM. LAW § 13-101, *ET SEQ.*)**

240.    Plaintiff Walton incorporates by reference the allegations in the preceding paragraphs.

241.    This claim is brought by Plaintiff Walton on behalf of the Maryland Class.

242.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability" and protecting the planet; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

243.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry,

are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably

244.    The Maryland Consumer Protection Act (Maryland CPA) provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive"; "false or misleading representation[s] of fact which concern[] . . . [t]he reason of or the existence or amount of a price reduction"; and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," Md. Code, Com. Law § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code, Com. Law § 13-302.

245.    Defendant, Plaintiffs, and Maryland Class members are "persons" within the meaning of Md. Code, Com. Law § 13-101(h).

246.    Pursuant to Md. Code, Com. Law § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON MARYLAND LAW)

247.    Plaintiff Walton incorporates by reference all preceding allegations as though fully set forth herein.

248.    Plaintiff Walton brings this Count on behalf of the Maryland Class.

249.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane

- 103 -

using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

250.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably

251.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Maryland law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

252.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Maryland Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Maryland Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Maryland Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

253.    Accordingly, Gore is liable to Plaintiffs and the other Maryland Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

254.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Maryland Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**B.    Claims brought on behalf of the California Class**

**COUNT III**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750, *ET SEQ.*)**

255.    Plaintiffs Johnston and Tsirkas incorporate by reference all preceding allegations as though fully set forth herein.

256.    Plaintiffs Johnston and Tsirkas bring this Count on behalf of the California Class.

257.    California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices

undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

258.   Gore-Tex Fabric products are "goods" as defined in CAL. CIV. CODE § 1761(a).

259.   Plaintiffs and the other California class members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiffs, the other California Class members, and Defendant are "persons" as defined in CAL. CIV. CODE § 1761(c).

260.   In purchasing products with Gore-Tex Fabric, Plaintiffs and the other California Class members were deceived by Defendant's marketing of Gore-Tex Fabric as an environmentally sustainable product, and obtaining money from Plaintiff and California Class members, while also failing to disclose that:

- Gore-Tex Fabric is a fundamentally unsustainable product and toxic to the environment;

- Gore's PFC* Free Laminate label misconstrues the common definition of PFC by unilaterally excluding ePTFE and PTFE;

- Gore currently uses PFAS to manufacture its PFC* Free products;

- Gore-Tex Fabric also sheds PFAS via ordinary use;

- Defendant's continuing violations of federal guidance on environmental marketing claims, e.g., the FTC Green Guides; and

- Defendant's continuing violations of other California laws, including Cal. Civ. Code §§ 1709, 1710, and 1750, *et seq.*, and Cal. Com. Code § 2313.

261.   Defendant's conduct, as described hereinabove, was and is in violation of the CLRA. Defendant's conduct violates at least CAL. CIV. CODE § 1770(a)(16) (representing that goods have been supplied in accordance with a previous representation when they have not).

262. Plaintiffs and the other California Class members have suffered injury in fact and actual damages resulting from Defendant's material omissions and/or misrepresentations because they paid an inflated purchase price for products with Gore-Tex Fabric.

263. Defendant knew, should have known, or was reckless in not knowing of the material omissions and/or misrepresentations.

264. The facts concealed and omitted by Defendant to Plaintiffs and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase products with Gore-Tex Fabric or pay a lower price. Had Plaintiffs and the other California Class members known about the material omissions and/or misrepresentations they would not have purchased these products or would not have paid the prices they paid in fact.

265. Plaintiffs have provided Gore with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). The notice was transmitted to Gore on January 28, 2025.

266. Plaintiffs and the other California Class members' injuries were proximately caused by Gore's fraudulent and deceptive business practices.

267. Therefore, Plaintiffs and the other California Class members are entitled to equitable relief and will amend this action and seek monetary relief under the CLRA.

### COUNT IV
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)

268. Plaintiffs Johnston and Tsirkas incorporate by reference all preceding allegations as though fully set forth herein.

269. Plaintiff Johnston and Tsirkas bring this Count on behalf of the California Subclass.

- 107 -

270.    Cal. Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

271.    Gore has violated Cal. Bus. & Prof. Code § 17500 because the omissions and/or misrepresentations regarding the environmental sustainability of Gore-Tex Fabric as set forth in this Complaint were material and likely to deceive a reasonable consumer.

272.    Plaintiffs and the other California Class members have suffered an injury in fact, including the loss of money or property, as a result of Gore's unfair, unlawful, and/or deceptive practices. In purchasing Gore-Tex Fabric products, Plaintiffs and the other California Class members saw and were exposed to the omissions and/or misrepresentations of Gore with respect to environmental sustainability of Gore-Tex Fabric. Gore's representations turned out not to be true because Gore's manufacturing processes are environmentally devastating, as described herein. Had Plaintiffs and the other California Class members known this, they would not have purchased products with Gore-Tex Fabric and/or paid as much for these products. Accordingly, Plaintiffs and the other California Class members overpaid for their Gore-Tex Fabric products and did not receive the benefit of their bargain.

273.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Gore's business. Gore's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

- 108 -

274.    Plaintiffs, individually and on behalf of the other California Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Gore from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other California Class members any money Gore acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT V
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

275.    Plaintiffs Johnston and Tsirkas incorporate by reference all preceding allegations as though fully set forth herein.

276.    Plaintiffs Johnston and Tsirkas bring this Count on behalf of the California Class.

277.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

278.    Gore's conduct, as described herein, was and is in violation of the UCL in at least the following ways:

279.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

280.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of

- 109 -

ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

281.   Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other California Class members to make their Gore-Tex purchases. Absent those omissions and/or misrepresentations, Plaintiffs and the other California Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other California Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

282.   Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Gore under Cal. Bus. & Prof. Code § 17200.

283.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Gore from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the California Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## COUNT VI
## FRAUDULENT CONCEALMENT
## (BASED ON CALIFORNIA LAW)

284.    Plaintiffs Johnston and Tsirkas incorporate by reference all preceding allegations as though fully set forth herein.

285.    Plaintiffs Johnston and Tsirkas bring this Count on behalf of the California Class.

286.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

287.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

- 111 -

288.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under California law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

289.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other California Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other California Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other California Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

290.    Accordingly, Gore is liable to Plaintiffs and the other California Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

291.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other California Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**C.      Claims brought on behalf of the Connecticut Class**

## COUNT VII
## VIOLATION OF THE CONNECTICUT UNFAIR
## TRADE PRACTICES ACT
## (CONN. GEN. STAT. § 42-110A, *ET SEQ.*)

292.     Plaintiffs Charron and Liberman hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

293.     This claim is brought by Plaintiffs Charron and Liberman on behalf of the Connecticut Class.

294.     Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

295.     Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's

- 113 -

definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

296.    The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

297.    Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

298.    Defendant's challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

299.    Plaintiffs and Connecticut Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

300.    Defendant acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights and safety of others. Therefore, punitive damages are warranted.

**COUNT VIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON CONNECTICUT LAW)**

301.    Plaintiffs Charron and Liberman incorporate by reference all preceding allegations as though fully set forth herein.

302.    Plaintiffs Charron and Liberman bring this Count on behalf of the Connecticut Class.

303.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming

its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

304.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

305.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Connecticut law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

306.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Connecticut Class members to make their Gore-Tex purchases. Plaintiffs were unaware of

these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Connecticut Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Connecticut Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

307. Accordingly, Gore is liable to Plaintiffs and the other Connecticut Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

308. Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Connecticut Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**D.     Claims brought on behalf of the District of Columbia ("DC")**

**COUNT IX**
**CONSUMER PROTECTION PROCEDURES ACT (CPPA)**
**(D.C. CODE § 28-3901, *ET SEQ.*)**

309. Plaintiffs Hulsey and Schaaf incorporate by reference all preceding allegations as though fully set forth herein.

310. This claim is brought by Plaintiffs Hulsey and Schaaf on behalf of the DC Class.

311. Defendant is a "merchant" and Plaintiffs and DC Class members are "consumers" as defined by the CPPA.

312. Plaintiffs and DC Class members purchased Gore-Tex Fabric products primarily for personal, household, or family use.

313.    Defendant committed a prohibited trade practices by misleading and deceiving consumers about the environmental impact of Gore-Tex Fabric products by omitting information about the environmentally devastating industrial manufacturing practices for Gore-Tex Fabric. Defendant's failure to state these material facts tended to mislead consumers and are therefore also are unfair and false.

314.    Defendant's actions as described herein are also prohibited under D.C. Code § 28-3904, including: misrepresenting material facts (subsection (e)); advertising goods/services with intent not to sell them as advertised (subsection (d)); falsely stating that goods/services are of a particular standard or quality (subsection (a)); and failing to state a material fact that would tend to mislead (subsection (f-1)).

315.    Plaintiffs and the DC Class members suffered economic harm by being misled into making a purchase, or paying a premium for products with Gore-Tex Fabric that they would not have done but for Defendant's deceptive and unfair practices.

## COUNT X
## FRAUDULENT CONCEALMENT
## (BASED ON DC LAW)

316.    Plaintiffs Hulsey and Schaaf incorporate by reference all preceding allegations as though fully set forth herein.

317.    Plaintiffs Hulsey and Schaaf bring this Count on behalf of the DC Class.

318.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR

- 117 -

waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

319.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

320.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under District of Columbia law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

321.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other DC Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other DC Class members would not have purchased Gore-Tex products or would not have

purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other DC Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

322.    Accordingly, Gore is liable to Plaintiffs and the other DC Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

323.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other DC Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**E.    Claims brought on behalf of the Florida Class**

**COUNT XI**
**VIOLATION OF THE FLORIDA'S UNFAIR &**
**DECEPTIVE TRADE PRACTICES ACT**
**(FLA. STAT. § 501.201, *ET SEQ.*)**

324.    Plaintiffs Collins and Contois hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

325.    Plaintiffs Collin and Contois bring this Count on behalf of the Florida Class.

326.    The Florida Unfair and Deceptive Trade Practices Act (FUDTPA) prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

327.    Plaintiffs and Class members are "consumers" within the meaning of the FUDTPA, Fla. Stat. § 501.203(7).

- 119 -

328.   Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

329.   In the course of business, Defendant willfully failed to disclose and actively concealed its environmentally devastating industrial manufacturing processes as discussed herein. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of products with Gore-Tex Fabric. These practices were in violation of the FUDTPA.

330.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Florida Class members, about the true environmental impact of products with Gore-Tex Fabric.

331.   Defendant intentionally and knowingly misrepresented material facts about Gore manufacturing processes with intent to mislead Plaintiffs and the Florida Class.

332.   Defendant knew or should have known that their conduct violated the FUDTPA.

333.   Defendant was required to disclose the omissions as they were contrary to their representations that Gore-Tex Fabric was an environmentally sustainable product. Defendant was also under a duty to disclose because it:

- Possessed exclusive knowledge that Gore-Tex Fabric manufacturing processes are environmentally devastating;

- Intentionally concealed the foregoing from Plaintiffs and the Florida Class; and/or

- Made incomplete representations about Gore-Tex Fabric's manufacturing processes while purposefully withholding material facts

- 120 -

from Plaintiffs and the Florida Class that contradicted these representations.

334. Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

335. Gore's omissions and/or misrepresentations about its supply chain and manufacturing practices are material to Plaintiffs and the Florida Class.

336. Plaintiffs and Florida Class members suffered ascertainable loss caused by Defendant's misrepresentations and their concealment of and failure to disclose material information about the environmental impact of the manufacture of Gore-Tex Fabric. Plaintiffs and Florida Class members who purchased products with Gore-Tex Fabric would have paid less for it or would not have purchased at all but for Gore's violations of the FUDTPA.

337.    Defendant's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

338.    As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

339.    Plaintiffs and Florida Class members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

340.    Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the FUDTPA.

## COUNT XII
## FRAUDULENT CONCEALMENT
## (BASED ON FLORIDA LAW)

341.    Plaintiff Collins and Contois incorporate by reference all preceding allegations as though fully set forth herein.

342.    Plaintiff Collins and Contois bring this Count on behalf of the Florida Class.

343.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

344.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of

- 122 -

ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

345.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Florida law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

346.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Florida Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Florida Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Florida Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

347. Accordingly, Gore is liable to Plaintiffs and the other Florida Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

348. Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Florida Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**F.      Claims brought on behalf of the Illinois Class**

**COUNT XIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A)**

349. Plaintiffs Barnett and Washington incorporate by reference all preceding allegations as though fully set forth herein.

350. Plaintiffs Barnett and Washington bring this Count on behalf of the Illinois Class.

351. Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

352. Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of

ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

353.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

354.    Gore is a "person" as that term is defined in 815 ILCS 505/1(c).

355.    Plaintiffs and Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

356.    815 Ill. Comp. Stat. Ann. 505/2 provides that "in construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

- 125 -

357.    Gore's overall packaging misled and deceived reasonable consumers because Gore omitted, suppressed, and concealed that its Gore-Tex Fabric was not environmentally beneficial, while representing environmentally beneficial quality and characteristics.

358.    Gore's communications on its Gore-Tex Fabric packaging demonstrate the misleading nature of the material omissions, concealments, and suppression of material facts about its environmentally degrading manufacturing practices.

359.    Based on the overall impression given by the packaging communications and misrepresentations and omissions, reasonable consumers would be misled by Gore-Tex Fabric's true environmental impact based on overall impression of labels. Based on the overall impression of the packaging, no reasonable consumer could expect or understand that Gore-Tex Fabric was manufactured using environmentally degrading practices.

360.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against Gore in the amount of actual damages as well as punitive damages because Gore acted with fraud and/or malice and/or was grossly negligent, and concealed, suppressed, and omitted material information.

*361*.    Plaintiffs also seek an order enjoining Gore's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq.*

**COUNT XIV**
**FRAUD BY CONCEALMENT**
**(BASED ON ILLINOIS LAW)**

362.    Plaintiffs Barnett and Washington incorporate by reference all preceding allegations as though fully set forth herein.

363.    Plaintiffs Barnett and Washington bring this Count on behalf of the Illinois Class.

364.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane

using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

365. Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

366. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Illinois law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

367.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiff and the other Illinois Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Illinois Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Illinois Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

368.    Accordingly, Gore is liable to Plaintiffs and the other Illinois Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

369.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Illinois Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**G.     Claims brought on behalf of the Minnesota Class**

### COUNT XV
### VIOLATIONS OF MINNESOTA DECEPTIVE TRADE PRACTICES; ENVIRONMENTAL MARKETING CLAIMS
### (MINN. STAT. § 325E.41, *ET SEQ.*)

370.    Plaintiff Johnson incorporates by reference all preceding allegations as though fully set forth herein.

371.    Plaintiff Johnson brings this Count on behalf of the Minnesota Class.

372.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane

using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

373.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

374.    Defendant violated Minn. Stat. § 325E.41 by making deceptive and misleading general environmental benefit claims (including sustainability claims) and failing to disclose material omitted information related to these statements.

375.    Defendant made these material misrepresentations and omissions to induce reasonable consumers to purchase its Gore-Tex Fabric.

376.    Defendant knew that the material misrepresentations and omissions were misleading to reasonable consumers and in violation of Code of Federal Regulations, title 16, part 260, "Guides for the Use of Environmental marketing claims" ("Green Guides").

377.    Specifically, Section 260.4, General environmental benefit, claims states: "It is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit ....Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims." (Emphasis added.)

378.    Defendant's pattern of deceptive and misleading misrepresentations and omissions, and other misleading conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Class with respect to the Gore-Tex Fabrics' quality, nature of the ingredients, and suitability for consumption.

379.    Defendant intended for Plaintiff and the Minnesota Class to rely on the material misrepresentations and omissions, concealment, expressed warranties, and/or deceptions regarding the environmental benefits and sustainability of its Gore-Tex Fabric.

380.    Defendant's conduct described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

381.    Defendant violated Minn. Stat. §325E.41 by making misrepresentations on its packaging and website that violated the Green Guides.

- 130 -

382.    Defendant was under a duty to disclose the omissions because Defendant undertook the disclosure of information about the Gore-Tex Fabric that violated the Green Guides.

383.    Defendant failed to discharge its duty to disclose the Omissions.

384.    The facts concealed, omitted, or not disclosed by Defendant were material facts in that Plaintiff, the Minnesota Class, and any reasonable consumer would have considered them in deciding whether to purchase the Gore-Tex Fabric. Had Plaintiff and the Minnesota Class known the truth, they would not have purchased the Gore-Tex Fabric or paid the premium price.

385.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

386.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Class suffered actual damages by: (1) paying a premium price; (2) purchasing Gore-Tex Fabric they would not have purchased; and/or (3) receiving Gore-Tex Fabric that were worth less.

387.    Plaintiff and the members of the Minnesota Class would not have purchased Gore-Tex Fabric at all had they known that Gore-Tex Fabric does not conform to the packaging.

388.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325E.41, Plaintiff and the Minnesota Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the Minn. Stat. § 325E.41.

**COUNT XVI**
**FRAUDULENT CONCEALMENT**
**(BASED ON MINNESOTA LAW)**

389.    Plaintiff Johnson incorporates by reference all preceding allegations as though fully set forth herein.

390.    Plaintiff Johnson brings this Count on behalf of the Minnesota Class.

- 131 -

391. Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

392. Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

393. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Minnesota law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Labels not misleading. Gore also knew that these representations were false when made.

- 132 -

394.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Minnesota Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Minnesota Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Minnesota Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

395.    Accordingly, Gore is liable to Plaintiffs and the other Minnesota Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

396.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Minnesota Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**H.    Claims brought on behalf of the New York Class**

**COUNT XVII**
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW**
**(N.Y. GEN. BUS. LAW §§ 349-350)**

397.    Plaintiffs Kelcourse, Liberman, and Lee hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

398.    This claim is brought by Plaintiffs Kelcourse, Liberman and Lee on behalf of the New York Class.

399.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane

- 133 -

using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

400.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

401.    The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

402.    Plaintiffs and New York Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

- 134 -

403.    Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

404.    Defendant's deceptive acts and practices, which were intended to mislead consumers who purchased Gore-Tex Fabric, was conduct directed at consumers.

405.    Because Defendant's willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Defendant's deceptive conduct; and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## COUNT XVIII
## FRAUDULENT CONCEALMENT
## (BASED ON NEW YORK LAW)

406.    Plaintiffs Kelcourse, Liberman, and Lee incorporate by reference all preceding allegations as though fully set forth herein.

407.    Plaintiff Kelcourse, Liberman, and Lee bring this Count on behalf of the New York Class.

408.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

409.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of

ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

410.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under New York law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Labels not misleading. Gore also knew that these representations were false when made.

411.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other New York Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other New York Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other New York Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

412.    Accordingly, Gore is liable to Plaintiffs and the other New York Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

413.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other New York Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**I.    Claims brought on behalf of the Washington Class**

**COUNT XIX**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*)**

414.    Plaintiffs Bozaan, Kundu and Mason incorporate by reference all preceding allegations as though fully set forth herein.

415.    Plaintiffs Bozaan, Kundu and Mason bring this Count on behalf of the Washington Class.

416.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

417.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of

ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

418.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010.

419.    Gore committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code Ann. § 19.96.010.

420.    Gore's deceptive practices, as alleged herein, are injurious to the public interest as it has the capacity to injure other persons.

421.    Gore has violated portions of section 260 of the FTC Green Guides, which have been incorporated into Wash. Rev. Code Ann. § 70A.455.020 and Wash. Rev. Code Ann. § 19.86.920.

422.    Gore is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

**COUNT XX**
**FRAUDULENT CONCEALMENT**
**(BASED ON WASHINGTON LAW)**

423.    Plaintiffs Bozaan, Kundu and Mason incorporate by reference all preceding allegations as though fully set forth herein.

424.    Plaintiffs Bozaan, Kundu and Mason bring this Count on behalf of the Washington Class.

425.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

426.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition

typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

427. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Washington law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex packaging) not misleading. Gore also knew that these representations were false when made.

428. Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Washington Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Washington Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Washington Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

429. Accordingly, Gore is liable to Plaintiffs and the other Washington Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

430. Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Washington Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**J.      Claims brought on behalf of the West Virginia Class**

## COUNT XXI
## VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT
## AND PROTECTION ACT
## (W. VA. CODE § 46A-1-101, *ET SEQ.*)

431.    Plaintiff Ornick hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

432.    Plaintiff Ornick brings this claim on behalf of residents of West Virginia who are members of the class.

433.    The Defendant is a "person" under W. Va. Code § 46A-1-102(31).

434.    Plaintiffs are "consumers," as defined by W. Va. Code §§ and 46A-1-102(12) and 46A-6-102(2), who purchased products with Gore-Tex Fabric.

435.    Defendant engaged in trade or commerce as defined by W. Va. Code § 46A-6-102(6).

436.    The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." W. Va. Code § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include:

> (I) Advertising goods or services with intent not to sell them as advertised;
>
> (K) Making false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions;
>
> (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;
>
> (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby;

- 141 -

(N) Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive; W. Va. Code § 46A-6-102(7).

437.    Pursuant to W. Va. Code § 46A-6-106, Plaintiff seeks monetary relief against the Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for Plaintiff and each West Virginia class member.

438.    Plaintiff also seeks punitive damages against the Defendant because they carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiff to cruel and unjust hardship as a result.

439.    Plaintiff further seeks an order enjoining the Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. Va. Code § 46A-5-101, *et seq*., and any other just and proper relief available under the West Virginia CCPA.

440.    On January 28, 2025, Plaintiffs sent a letter complying with W. Va. Code § 46A-6-106(b) to Gore. Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT XXII
## FRAUDULENT CONCEALMENT
## (BASED ON WEST VIRGINIA LAW)

441.    Plaintiff Ornick incorporates by reference all preceding allegations as though fully set forth herein.

442.    Plaintiff Ornick brings this Count on behalf of the West Virginia Class.

- 142 -

443.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

444.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

445.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under West Virginia law. Gore therefore had a duty to disclose the material facts as additional information in order to make

- 143 -

its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

446.    The knowing and active concealment of material facts render Gore-Tex Fabric Hang Tags deceptive, misleading, and unfair because without full disclosure, Plaintiff and the West Virginia Class believed that Gore-Tex Fabric was environmentally sustainable when it is not.

447.    Gore's omissions, concealment, and/or misrepresentations alleged herein caused Plaintiff and the other West Virginia Class members to make their Gore-Tex purchases. Plaintiff was unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiff and the other West Virginia Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiff and the other West Virginia Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

448.    Accordingly, Gore is liable to Plaintiff and the other West Virginia Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

449.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other West Virginia Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**K.    Claims brought on behalf of the Georgia Class**

### COUNT XXIII
### VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. § 10-1-390, *ET SEQ.*)

450.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

451.    This claim is brought by Plaintiffs on behalf of residents of Georgia who are members of the Class.

452.    The Georgia Fair Business Practices Act (Georgia FBPA) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

453.    Plaintiffs and class members are "consumers" within the meaning of Ga. Code. Ann. § 10-1-393(b).

454.    Defendant is engaged in "trade or commerce" within the meaning of Ga. Code. Ann. § 10-1-393(b).

455.    Plaintiffs entitled to recover damages and exemplary damages (for intentional violations) pursuant to Ga. Code. Ann. § 10-1-399(a).

456.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA pursuant to Ga. Code. Ann. § 10-1-399.17.

457.    On January 28, 2025, Plaintiffs sent letters complying with Ga. Code Ann. § 10-1-399(b) to Gore. Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

**COUNT XXIV**
**FRAUDULENT CONCEALMENT**
**(BASED ON GEORGIA LAW)**

458.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

459.    Plaintiffs bring this Count on behalf of the Georgia Class.

460.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

461.    Gore also made the following misrepresentations that are likely to mislead reasonable consumers: (i) Gore's definition of "PFC EC" is a definition that Gore itself created and excludes the extremely harmful PTFE chemical, thereby deviating from common definitions used by the EPA, environmental groups and academic researchers; and (ii) Gore's direct-to-consumer sales website confuses consumers by using terms such as PFC, PFC*, PFC EC, and PFAS interchangeably.

462.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways

- 146 -

near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

463.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Georgia law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

464.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Georgia Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Georgia Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Georgia Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

465.    Accordingly, Gore is liable to Plaintiffs and the other Georgia Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

466.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Georgia Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**L.    Claims brought on behalf of the Idaho Class**

**COUNT XXV**
**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**
**(IDAHO CODE ANN. § 48-601, *ET SEQ.*)**

467.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

468.    This claim is brought by Plaintiffs on behalf of the Idaho Class.

469.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

470.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways

- 148 -

near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

471.    The Idaho Consumer Protection Act (Idaho CPA) prohibits deceptive business practices, including, but not limited to, "(11) [m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "(17) [e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer"; or "(18) engaging in any unconscionable method, act or practice in the conduct of trade or commerce." Idaho Code Ann. § 48-603.

472.    Defendant is a "person" under Idaho Code Ann. § 48-602(1).

473.    Defendant's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code Ann. § 48-602(2).

474.    Pursuant to Idaho Code § 48-608, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each plaintiff.

475.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

476.    Plaintiffs also seek punitive damages against Defendant because Defendant's conduct evidences an extreme deviation from reasonable standards. Defendant flagrantly, maliciously, and fraudulently misrepresented the environmental sustainability of Gore-Tex Fabric and concealed facts that only it knew. Defendant's unlawful conduct constitutes malice, oppression and fraud warranting punitive damages.

## COUNT XXVI
## FRAUDULENT CONCEALMENT
## (BASED ON IDAHO LAW)

477.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

478.    Plaintiffs bring this Count on behalf of the Idaho Class.

479.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

480.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the

- 150 -

manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

481. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Idaho law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

482. Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Idaho Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Idaho Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Idaho Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

483. Accordingly, Gore is liable to Plaintiffs and the other Idaho Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

484.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Idaho Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**M.      Claims brought on behalf of the Maine Class**

**COUNT XXVII**
**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT**
**(ME. REV. STAT. ANN. TIT. 5, § 205-A, *ET SEQ.*)**

485.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

486.    This claim is brought by Plaintiffs on behalf of residents of Maine who are members of the class.

487.    The Maine Unfair Trade Practices Act (Maine UTPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Me. Rev. Stat. Ann. tit. 5, § 207.

488.    Defendant, Plaintiffs, and class members are "persons" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(2).

489.    Defendant is engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(3).

490.    Pursuant to Me. Rev. Stat. Ann. tit. 5, § 213, Plaintiffs seek an order enjoining each Defendant's unfair and/or deceptive acts or practices.

491.    On January 28, 2025, Plaintiffs sent a letter complying with Me. Rev. Stat. Ann. tit. 5, § 213(1-A) to Gore. Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT XXVIII
## FRAUDULENT CONCEALMENT
## (BASED ON MAINE LAW)

492.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

493.   Plaintiffs bring this Count on behalf of the Maine Class.

494.   Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

495.   Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

496.   Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Maine law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

497.   Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Maine Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Maine Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Maine Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

498.   Accordingly, Gore is liable to Plaintiffs and the other Maine Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

499.   Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Maine Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

N.      **Claims brought on behalf of the Massachusetts Class**

**COUNT XXIX**
**VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A)**
**(MASS. GEN. LAWS CH. 93A § 1, *ET SEQ.*)**

500.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

501.    This claim is brought by Plaintiffs on behalf of residents of Massachusetts who are members of the class.

502.    Massachusetts law (the Massachusetts Act) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

503.    Defendant, Plaintiffs, and class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

504.    Gore engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

505.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs will seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each plaintiff. Because Gore's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each plaintiff, up to three times actual damages, but no less than two times actual damages.

506.    Plaintiffs also seek an order enjoining Gore's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

507.    On January 28, 2025, Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

- 155 -

## COUNT XXX
## FRAUD BY CONCEALMENT
## (BASED ON MASSACHUSETTS LAW)

508.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

509.    Plaintiffs bring this Count on behalf of the Massachusetts Class.

510.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

511.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

- 156 -

512. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Massachusetts law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

513. Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Massachusetts Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Massachusetts Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Massachusetts Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

514. Accordingly, Gore is liable to Plaintiffs and the other Massachusetts Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

515. Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Massachusetts Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**O.     Claims brought on behalf of the New Hampshire Class**

COUNT XXXI
**VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
(N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)**

516.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

517.    This claim is brought by Plaintiffs on behalf of the New Hampshire Class.

518.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

519.     Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition

- 158 -

typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

520. The New Hampshire Consumer Protection Act (New Hampshire CPA) prohibits a person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or practice," including, "but . . . not limited to" "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." N.H. Rev. Stat. Ann. § 358-A:2.

521. Defendant, Plaintiffs, and New Hampshire Class members are "persons" under N.H. Rev. Stat. Ann. § 358-A:1.

522. Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. Ann. § 358-A:1.

523. Because Defendant's willful conduct caused injury to Plaintiffs' property through violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining each Defendant's unfair and/or deceptive acts and practices; and any other just and proper relief under N.H. Rev. Stat. Ann. § 358-A:10.

**COUNT XXXII**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW HAMPSHIRE LAW)**

524. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

525. Plaintiffs bring this Count on behalf of the New Hampshire Class.

526. Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming

- 159 -

its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

527.   Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations(1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

528.   Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under New Hampshire law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

529.   Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other New Hampshire Class members to make their Gore-Tex purchases. Plaintiffs were unaware

- 160 -

of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other New Hampshire Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other New Hampshire Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

530.    Accordingly, Gore is liable to Plaintiffs and the other New Hampshire Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

531.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other New Hampshire Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**P.    Claims on behalf of the New Mexico Class**

### COUNT XXXIII
### VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. § 57-12-1, *ET SEQ.*)

532.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

533.    This claim is brought by Plaintiffs on behalf of the New Mexico Class.

534.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR

- 161 -

waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

535.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

536.    The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including, but not limited to, "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).

537.    Defendant, Plaintiffs, and New Mexico Class members are "person[s]" under N.M. Stat. Ann. § 57-12-2.

- 162 -

538.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

539.    Because Defendant's unconscionable, willful conduct caused actual harm to Plaintiffs, Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

## COUNT XXXIV
## FRAUDULENT CONCEALMENT
## (BASED ON NEW MEXICO LAW)

540.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

541.    Plaintiffs bring this Count on behalf of the New Mexico Class.

542.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

543.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via

- 163 -

ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

544. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under New Mexico law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

545. Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other New Mexico Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other New Mexico Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other New Mexico Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

546. Accordingly, Gore is liable to Plaintiffs and the other New Mexico Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

547. Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other New Mexico Class members'

rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Q.      Claims brought on behalf of the Pennsylvania Class**

### COUNT XXXV
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION LAW
### (73 PA. CONS. STAT. § 201-1, *ET SEQ.*)

548.      Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

549.      This claim is brought by Plaintiffs on behalf the Pennsylvania Class.

550.      Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

551.      Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry,

- 165 -

are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

552.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including: "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. § 201-2(4).

553.    Defendant, Plaintiffs, and Pennsylvania Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

554.    Plaintiffs and the Pennsylvania Class members purchased Gore-Tex Fabric primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

555.    All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

556.    Defendant is liable to Plaintiffs for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a). Plaintiffs are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT XXXVI
## FRAUDULENT CONCEALMENT
## (BASED ON PENNSYLVANIA LAW)

557.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

558.    Plaintiffs bring this Count on behalf of the Pennsylvania Class.

559.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

560.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

- 167 -

561.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Pennsylvania law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

562.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Pennsylvania Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Pennsylvania Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Pennsylvania Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

563.    Accordingly, Gore is liable to Plaintiffs and the other Pennsylvania Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

564.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Pennsylvania Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**R.      Claims brought on behalf of the Vermont Class**

**COUNT XXXVII**
**VIOLATION OF THE VERMONT CONSUMER FRAUD ACT**
**(VT. STAT. ANN. TIT. 9, § 2451, *ET SEQ.*)**

565.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

566.    This claim is brought by Plaintiffs on behalf of the Vermont Class.

567.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

568.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition

- 169 -

typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

569.    The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce . . . ." Vt. Stat. Ann. tit. 9, § 2453(a).

570.    Defendant was a seller within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

571.    Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT XXXVIII
## FRAUDULENT CONCEALMENT
## (BASED ON VERMONT LAW)

572.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

573.    Plaintiffs bring this Count on behalf of the Vermont Class.

574.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

575.    Gore actively conceals from consumers the following with its Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of

ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of Gore-Tex products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) Gore-Tex Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

576.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Vermont law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore Tex Hang Tags not misleading. Gore also knew that these representations were false when made.

577.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Vermont Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Vermont Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Vermont Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

578.    Accordingly, Gore is liable to Plaintiffs and the other Vermont Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

579.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Vermont Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the State Classes, respectfully request that the Court enter judgment in their favor and against Gore, as follows:

A.    Certification of the proposed State Law Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Gore from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C.    Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

D.    An order requiring Gore to pay both pre- and post-judgment interest on any amounts awarded;

E.    An award of costs and attorneys' fees; and

F.    Such other or further relief as may be appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

- 172 -

DATED: August 8, 2025

Respectfully submitted,

*/s/ Zachary Krowitz*
Zachary Krowitz (MD SLN: 22370)
Brent W. Johnson*
Alison Deich*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
zkrowitz@cohenmilstein.com
bjohnson@cohenmilstein.com
adeich@cohenmilstein.com

Steve W. Berman (pro hac vice)
Catherine Y.N. Gannon (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
catherineg@hbsslaw.com

Rebecca A. Peterson (pro hac vice)
Krista K. Freier*
Catherine A. Peterson*
**GEORGE FELDMAN MCDONALD, PLLC**
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
rpeterson@4-justice.com
kfreier@4-justice.com
cpeterson@4-justice.com

Lori G. Feldman*
**GEORGE FELDMAN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
lfeldman@4-Justice.com

***Attorneys for Plaintiffs***

*\*Pro hac vice* application to be filed

- 173 -

- 174 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Zachary Krowitz*
Zachary Krowitz